## ANDERSON v. HIRSCH et al.

### No. 4695.

Court of Civil Appeals of Texas. Amarillo.

Nov. 22, 1937.

Rehearing Denied Jan. 17, 1938.

R. A. Wilson, of Amarillo, for appellant.

Clayton & Bralley, of Amarillo, Isaac S. Heller, of New Orleans, and Mack & Mack, of Fort Worth, for appellees.

FOLLEY, Justice.

This is a usury suit in which the appellees, Morris Hirsch and James J. Plauche, plaintiffs below, were acting in a fiduciary capacity as trustees for the use and benefit of various holders of notes all growing out of the same transaction. The appellant, I. H. Anderson, was the principal defendant below, however, other lienholders were parties to the suit, either as defendants or interveners, including the Sterling National Bank & Trust Company of New York. The Sterling National Bank & Trust Company was an intervener in the suit and is the only lienholder, except the plaintiffs, against whom any relief is sought in this court. We shall give the appellees their trial court designation. I. H. Anderson, being the only defendant in this appeal, we shall refer to him as the defendant.

On October 1, 1926 the defendant, I. H. Anderson, borrowed $45,000 from the Southern Mortgage Company. He executed therefor 47 notes, 43 of said notes were in the principal sum of $1,000 each, and 4 of said notes were in the sum of $500 each. Two of the said $1,000 notes were made due and payable on October 1st in each of the

years 1927, 1928, 1929, 1930, 1931, and 1932, respectively, 3 of said $1,000 notes were made due and payable on October 1st in each of the years 1933, 1934, and 1935, respectively, and 22 of the $1,000 notes were made due and payable on October 1, 1936. The four notes for $500 each were made due and payable, respectively, on October 1, 1930, 1931, 1932, and 1936. All of these notes provided for interest at the rate of 6½ per cent. per annum payable semiannually, and they provided for interest after maturity at the rate of 10 per cent. per annum. They also provided that in case of default in the payment of either the principal or interest, then all of the principal and interest should, at the option of the holder, become due and payable without notice. The notes also provided for 10 per cent. attorneys' fees in case of default.

A deed of trust of even date with the above notes was executed by I. H. Anderson (then a bachelor) covering lot No. 5, and the south half of lot No. 4, in block No. 125 of the Plemons addition to the city of Amarillo, in Potter county, Tex., to secure the payment of said notes. This property was identified in the testimony as being the Melrose Apartments located at 500 to 506 West Tenth street in Amarillo, Tex.

Contemporaneously with and as a part of the above transaction, the defendant executed and delivered to the Southern Mortgage Company five notes for the sum of $900 each, due respectively on October 1, 1927, 1928, 1929, 1930, and 1931. These notes bore interest from maturity at the rate of 10 per cent. per annum until paid. A second lien deed of trust was given by the defendant upon the same property above described to secure the payment of these 5 notes. This second lien deed of trust recited that these notes represented a part of the interest on the $45,000 borrowed from the Southern Mortgage Company, and there is no controversy between the parties as to these notes being for additional interest on the loan.

Suit was originally filed on the unpaid notes of the first lien series on June 13, 1932, by the Union Title Guarantee Company, Inc. The five notes for $900 each were not included in this petition or any succeeding amended petition of plaintiffs. The plaintiffs Hirsch and Plauche were substituted as plaintiffs in this original suit and prosecuted the suit to judgment, which judgment was dated December 23, 1935.

The facts with reference to the payments made on the debt by the defendant were undisputed. He had paid all the first lien mortgage notes at or about their respective maturities up to and including October 1, 1930, and all interest on all the notes up to April 1, 1931. He had paid the sum of $8,500 on the principal of the first lien notes and the sum of $13,471.25 as interest, a total amount of $21,971.25. In addition to this Anderson had paid three of the second lien notes in the total sum of $2,700, two of said series remaining unpaid, but the record is silent as to whom the three second lien notes were paid. At the time the original suit was filed and at the time the judgment herein was rendered, all first lien notes maturing after October 1, 1930, and all interest installments on said notes maturing after April 1, 1931, were past due. Taxes on the property involved were delinquent to the extent of more than $2,500, which delinquency, by the terms of the first lien deed of trust, could accelerate the maturity of the first lien notes at the option of the holder.

The defendant's principal defense in the trial court was a plea of usury, asserting that the contract was so tainted with usury that he was entitled to have all payments made by him applied on the principal indebtedness of $45,000, thereby reducing said principal to such an extent that there would have been no principal in default at the time the suit was filed or at the time judgment was rendered.

The cause was tried before the court without a jury. The trial court found against defendant's plea of usury. Judgment was rendered in favor of plaintiffs against the defendant in the total sum of $54,467.64, which amount included $36,500 principal, $13,016.04 interest, and $4,951.60 as attorneys' fees. The intervener, Sterling National Bank & Trust Company, recovered judgment for debt and foreclosure against the defendant in the sum of $430.88 as a result of a mechanic's lien on said property, in connection with paving improvements adjacent to said property. In this amount was included an attorney's fee in the sum of $50. This attorney's fee is the basis of the complaint made in this court by the defendant as to the judgment of foreclosure rendered against him in favor of the Sterling National Bank & Trust Company. No complaint is made in this court by the defendant as to the judgment in regard to the other parties, which

we have not named, and we therefore deem it unnecessary to mention these parties herein. The defendant Anderson appeals to this court only as to the judgment rendered against him in favor of the plaintiffs and as to the $50 attorney's fee included in the foreclosure judgment in favor of the Sterling National Bank & Trust Company. His principal complaint in this court against the plaintiffs is his allegation that the loan contract above was usurious.

The notes declared upon in this suit were numbers 10 to 47, inclusive, of the first mortgage series, all prior notes of this series having been paid. To these notes were attached interest coupons representing the 6½ per cent. interest on the notes. All the notes bore interest at the rate of 10 per cent. after maturity and contained the usual accelerated maturity clause. Each of the notes sued upon from 10 to 47, inclusive, except numbers 10, 11, and 12, had printed on the inside of the thin pasteboard cover of the note these words:

"The payer hereof has the option of prepaying this loan in multiples of $100.00 on any annual interest paying date by paying principal, accrued interest, and a bonus of 2 per cent. by giving 60 days' written notice of his intention to pay."

As a basis for the alleged usury, we here quote from the first mortgage lien those portions which may relate to the defendant's claim of usury. The first mortgage notes were referred to in the deed of trust as "Bond." The first lien deed of trust contained the following language:

"Now therefore, if default should be made in the payment of said bond, or any installment of interest thereon, when same shall become due, and any one of said sums shall remain unpaid for ten days after maturity, or in case of the breach of any one of the agreements and covenants herein mentioned, or in any case herein provided, then, on the application of the legal holder or holders of said bond, the said Trustee or his successor or successors appointed hereunder, is hereby authorized and empowered to sell the property hereby conveyed to the highest bidder, * * * and it is hereby agreed that the said Trustee, or his successor, may sell said property together or in lots or parcels, as to him shall seem expedient, and after said sale, as aforesaid, shall make, execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds in law to the property so sold, in fee simple; and shall receive the proceeds of said sale and out of the same, shall pay: First, all charges, costs and expenses of executing this trust, including a fee to said Trustee of five per cent. on the full amount realized at said sale; *Second, the debt and all sums of money due or to become due hereunder, including attorney's fee, with interest as agreed;* Third, to the payment of the taxes, assessments, and all other payments made for or on account of the said Grantor herein on the premises aforesaid, with interest; and Fourth, shall pay the overplus, if any, to said Grantor, his, her, or their legal representatives or assigns on reasonable request. (Italics ours.)

"The Grantor further covenants and agrees with said Trustee and his successors as follows, to-wit:

"(1) To pay the sums named in said bond according to the terms thereof, with interest as specified. * * *

"It is further specially agreed that if any tax or assessment shall be imposed by the State of Texas upon said bonds, or upon the interest of the said Trustee or his successors, or of the said Southern Mortgage Company or its assigns in said premises, or upon the lien of this instrument, or if said lien or interest shall be declared to be real estate, and shall, as such or otherwise, be so taxed or assessed while said bonds and lien are the property of said Southern Mortgage Company, or its assigns, or other non-resident of the State of Texas, then the Grantor, his, her or their legal representatives or assigns shall at once discharge said tax or assessment, and neither the said Southern Mortgage Company, nor its assigns, nor said Trustee, nor his successors shall be liable therefor.

"It is further specially agreed that if default be made in the payment of said bonds or any interest thereon, or in the performance of any of the covenants or agreements herein contained, or if any of the taxes or assessments referred to in the last preceding paragraph hereof shall be imposed, then, at the option of the legal holder or holders of said bonds the whole indebtedness secured hereby shall at once become due, without notice, and may be collected by suit or proceeding hereunder."

The five second lien notes for $900 contained no acceleration of maturity clause. Each of these notes contained the following language:

"This note shall be payable in the full amount herein specified and shall not be depreciated on account of any optional pay-

ment which might be made on the first mortgage notes or bonds."

The second lien deed of trust securing the five second lien notes also did not contain an accelerated maturity clause, but did contain the following language:

"This deed of trust is made subject to a First Deed of Trust executed by the Grantors herein to Henry James, Trustee, for the purpose of securing Forty-seven (47) notes hereinafter called 'Bonds', aggregation Forty-Five Thousand and No/100 ($45,000.00) Dollars, payable to said Southern Mortgage Company, said notes hereinabove described and secured hereby being given for a part of the interest on said bonds as evidenced and described by said First Deed of Trust of even date herewith;

"* * * but if default shall be made in the payment of any part of said indebtedness or of any of said notes, or in the performance of any covenant, condition, stipulation or agreement herein, or of said First Deed of Trust, then in any such event said Trustee shall foreclose by action or at the request of the holder of any past due and unpaid note, charge, or item secured thereby, sell the property hereby conveyed subject to the lien of said First Deed of Trust, and subject also to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured, * * * and it is expressly agreed that said Trustee, or his successor, may sell said property in lots or parcels or as one tract as to him shall seem expedient; that after such sale he shall make, execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds in fee simple therefor, subject, however, to the lien of said First Deed of Trust and to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured, and shall receive the proceeds of such sale which shall pay and disburse as follows, to wit:

"First, he shall pay all charges, costs, and expenses of executing this trust, including costs of abstract of title and compensation for himself and his attorney;

"Second, he shall pay such portion of the debt and other sums hereby secured as shall have become due and payable at the time of instituting such proceeding, together with interest; and

"Third, The balance, if any, he shall render unto the Grantor or to the heirs, assigns or legal representatives of the Grantor upon reasonable request therefor."

The defendant does not represent that he at any time paid a greater rate of interest than 10 per cent, nor does he claim that if the contract had run the full ten-year term, that a greater rate of interest than 10 per cent would have been paid. Regardless of this, he contends that the contract as a whole shows a manifest intention on the part of the lender to exact usury from the borrower. He bases this contention mainly on the acceleration of maturity clause in the first lien deed of trust, alleging that this provision in connection with the provision as to the second lien notes would require the defendant to pay a greater rate of interest than the maximum amount allowed by law.

We think such contention of usury with reference to this phase of the contract has been passed on by the Commission of Appeals in the case of Southland Life Ins. Co. v. Egan et ux., 126 Tex. 160, 86 S.W.2d 722, 724. Judge Smedley wrote the opinion in that case, which was adopted by the Supreme Court. The facts in that case are parallel to the facts in the instant case except for the tax provision above quoted which we will discuss later in this opinion. Otherwise, the language of the instruments of the two cases are identical in meaning and effect. We think the holding in the Egan Case disposes of this phase of the alleged usury in our case. We shall, therefore, quote extensively from the Egan Case and adopt the holding of such case as our holding in the instant case. In such case the court said:

"We find no usury in the contract evidenced by the notes and deeds of trust. The acceleration clauses in the principal note and the first deed of trust give the holder the option to declare due 'the whole of this indebtedness' or 'the whole of the debt herein secured' upon default in the payment of any interest. It is settled that this language does not authorize the collection of unearned interest. Dugan v. Lewis, 79 Tex. 246, 249, 14 S.W. 1024, 12 L.R.A. 93, 23 Am.St.Rep. 332; Lincoln National Life Ins. Co. v. Anderson, 124 Tex. 556, 80 S.W.2d 294, [81 S.W.2d 1112]; Odell v. Commerce Farm Credit Co., [124 Tex. 538], 80 S.W.2d 295; Marble Savings Bank v. Davis, [124 Tex. 560], 80 S.W.2d 298; Burnette v. Realty Trust Co. (Tex.Civ.App.) 74 S.W.2d 536 (application for writ of error refused).

"It is argued that the language of the first deed of trust, directing the trustee

after the sale to apply the proceeds to the payment of 'the note above described and all sums of money due or to become due hereunder, with interest as agreed,' is to be construed as authorizing the owner of the note to declare unearned interest due, and as making the contract usurious. The Court of Civil Appeals in Peoria Life Ins. Co. v. Harton, 84 S.W.2d 864, held that a deed of trust containing substantially the same language was free from usury. Application for writ of error was refused.

"Those parts of the note and the deed of trust which expressly empower the holder to accelerate maturity give him the option, as above held, to declare due only the principal and earned interest. Unearned interest, therefore, is not a sum or sums of moneys to become due under the contract. But even if the phrase with reference to the application of the proceeds of sale is susceptible of the construction that it impliedly authorizes the holder to declare due and collect unearned interest, such implication should not be permitted to override that part of the contract which expressly deals with the option to accelerate.

"Finally, it is contended that the contract is usurious because of the last sentence in the second deed of trust: 'And if the maker hereof shall pay said first lien note or notes before maturity thereof, then all the unpaid balance of the note herein secured shall immediately become due and payable.' The first lien note is not payable on or before, and neither the note nor the deed of trust securing it gives the maker an option to pay it before maturity. The sentence quoted from the second deed of trust may reasonably be construed as intended to have effect only in the event the first lien note is according to its terms payable before maturity. A construction which causes it to conflict with the terms of the note should be avoided.

"This provision, however, even if construed as giving the maker the option of paying the principal note before maturity and as requiring him upon exercising such option to pay all of the interest represented by the second lien notes, does not taint the contract with usury. Under this construction, the contract merely gives the borrower the privilege of paying the debt before maturity. It does not bind him to do so. Payment of interest is the condition upon which the option may be exercised or the consideration for the option; and the option, even 'if it required payment of all interest to the end of the original period of the loan, would exact nothing more than the lender could lawfully demand in the absence of the option. Vela v. Shacklett (Tex.Com.App.) 12 S.W.(2d) 1007; Smithwick v. Whitley, 152 N.C. 366, 67 S.E. 914, 28 L.R.A.(N.S.) 113 and note, 20 Ann.Cas. 1348; 27 R.C.L. p. 235, § 36; 66 C.J. p. 202, § 118."

From a careful reading of the above opinion, we think it is evident that it answers in the negative defendant's allegation of usury which is based on the acceleration of maturity clause in the first lien deed of trust and the second lien notes and the lien therefor. We can see no distinction that could reasonably be drawn between the two cases. The only variance in the stipulations in the two contracts is that in the instant case the borrower was clearly given an option of paying the first lien notes before maturity, while such option was in the Egan Case only by inference. In this connection the Egan Case holds that if there was such an option that such would not taint the contract with usury for the reasons above quoted in such opinion.

■ The only question left for our determination on the issue of usury is with reference to the tax provision above recited. This question is not presented except in a general way in defendant's brief. He alleges that the contract as a whole is usurious, but he makes no direct reference to the tax provision. Since such provision is a part of the contract, we think the question is sufficiently presented to merit our discussion.

From a careful examination of the loan contract, it will be seen that the defendant was obligated to pay 6½ per cent. interest for the use and detention of the money during each year of the ten-year period. In addition to this, he was obligated to pay $4,500 as interest during the first five years of the loan in equal annual installments of $900 each. This would amount to an additional charge of 2 per cent. per annum for the first five years of the contract, based on the original principal sum of $45,000. If the loan had run the full ten years, according to the original contract, the defendant would never have been, in any year, obligated to pay as much in-

terest as the maximum amount allowed by law.

The defendant offered no proof in the trial court with reference to the amount of taxes which might have been assessed against such bonds or notes during any year of the contract period, nor was there any showing that any such assessment was in fact made. Since the amount of the interest charged on the loan was less than the statutory maximum for each of the years of the contract period, we think it was incumbent on the defendant to make some showing in the trial court in regard to the amount of taxes which might have been assessed under the tax clause. Having failed to make such a showing in the trial court, and the trial court having found against the defendant on the question of usury, we think the defendant's claim of usury in this regard falls for lack of proof to support his contention. In the case of Duvall et ux. v. Kansas City Life Ins. Co. et al., 96 S.W.2d 793, 796, in which case a similar tax clause was involved, the Waco Court of Civil Appeals, in an opinion by Chief Justice Gallaher, held:

"When, however, the interest absolutely payable is, as in this case, less than the statutory maximum, a provision requiring the payment of further sums upon a contingency not under the debtor's control does not necessarily render the contract usurious. In such cases it must further appear affirmatively that the parties, when they contracted, contemplated that in one or more years of the duration of the loan the interest agreed upon, together with such sum or sums as might become payable on the stipulated contingency, would amount in the aggregate to more than 10 per cent. of the principal unpaid at that time, and that the creditor intended that the debtor should nevertheless pay the same."

This judgment of the Court of Civil Appeals was affirmed by the Supreme Court in 104 S.W.2d 11, 13, in an opinion by Judge Taylor, in which it is held:

"Furthermore, the contract was made in the light of what amount in the aggregate the parties when they entered into the contract might reasonably have expected the taxes to be for the year the contract was made, and the record does not disclose what the respective bases of assessment and respective rates were for that year and the years immediately preceding, at some place in this state. This is nec-

essary to be shown in order to determine whether the contract is usurious."

In the case of Southern States Mortgage Co. et al. v. Lykes et al., 85 S.W.2d 780, 783, writ refused, in an opinion by the present Chief Justice Jackson of this court, it is held:

"If the contract for the use and detention of the principal debt is not a sum greater than such debt would produce at 10 per cent. per annum from the time the borrower had the use of the money until it is repaid, it is not usurious. Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 63 S.W. 860, 64 S.W. 778."

In the case of Walker et al. v. Temple Trust Co., 124 Tex. 575, 80 S.W.2d 935, 936, the Commission of Appeals in an opinion by Judge German, adopted by the Supreme Court, it is held:

"The determination of whether or not usury exists in a contract is a matter involving first and pre-eminently the principle which is the polestar of construction, to wit: The ascertainment of the dominant purpose and intention of the parties embodied in the contract, interpreted as a whole, in the light of the attending circumstances and the governing rules of law which presumptively they intended to observe and obey in making the contract.

"It is fundamental that to constitute usury there must exist an intention to exact more for the use, forbearance, or detention of money than the maximum allowed by law. Of course where the contract 'upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent.' When, however, as here, the presence of usury is sought to be established by an isolated provision of an extensive contract, the true meaning of such provision must be arrived at by interpreting the language of the specific stipulation in harmony with and as a part of the dominant intent evidenced by the contract in all its parts and as a whole. It is erroneous to say that any contingency, even though within the literal words of the contract, by which the lender may get more than the lawful rate of interest, makes the contract usurious, when such contingency is evidenced only by some isolated provision of a general contract, without inquiring further to determine the real meaning of such isolated stipulation in the light of the true intention of the parties. To give arbitrary force to some separate

stipulation in the contract, without further inquiry, is to depart from the master principle of construction—the ascertainment of the real intention of the parties.

"While of course courts have no right to depart from the terms in which the contract is expressed to make legal what the parties have made unlawful, nevertheless when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality. It is presumed that in contracting parties intend to observe and obey the law. For this reason the court will not hold a contract to be in violation of the usury laws unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law. 'In short, the general rule of interpretation and construction of such contracts may be said to be that the contract is not usurious when it may be explained on any other reasonable hypothesis.' 66 C.J. p. 173."

From the authorities above cited, it is our opinion that the record before us in this case fails to show usury. Upon a reasonable interpretation of all the instruments of this loan contract, we do not think it is manifest that there was any intention on the part of the lender to exact more interest than was allowed by law. We overrule all of defendant's assignments based on usury.

■ The defendant questions the authority of the plaintiffs to prosecute this suit, asserting that the execution of the transfers of the notes sued upon was not proved, and that it was not shown that plaintiffs owned the notes. As we have stated above, the plaintiffs acted only as trustees for the owners of the notes, and we think their authority to so act is evident from the record. It is not material that the notes were not payable to the plaintiffs. The plaintiffs came into court with a motion asking that they be substituted for the original plaintiffs. This motion was granted by the court and they were so substituted. At such time the defendant did not file a plea in abatement. He did not ask that additional plaintiffs be made parties to the suit, and he did not ask for a continuance until such plaintiffs could be made parties. He made no assertion that the plaintiffs were not entitled to recover in the capacity in which they sued. The assignments transferring

the notes to plaintiffs were introduced in evidence. The defendant did not file any affidavit contesting the genuineness of these assignments. Inasmuch as the record shows that the plaintiffs were authorized to act in the fiduciary capacity in which they did act, we overrule this assignment. Baker v. Citizens' Bank of Gorin, Mo., Tex.Civ.App., 278 S.W. 330; Nickels v. Gilmore, Tex.Civ.App., 293 S.W. 884; Galveston, H. & S. A. Ry. Co. v. Mallott, Tex.Civ.App., 6 S.W.2d 432.

■■ The defendant also complains of the trial court's action in allowing the plaintiffs to file a trial amendment after the conclusion of the trial but before judgment was rendered. The trial amendment, about which complaint is made, was in regard to the assignments of the notes to the plaintiffs. The court qualified defendant's bill of exception in regard to this trial amendment by stating that during the introduction of testimony, when the defendant had objected to certain evidence in regard to these assignments, the plaintiffs asked leave to file this trial amendment, and that the court granted such request. The amendment was not filed at this particular time, but in keeping with the court's permission, the same was filed after the conclusion of the trial. The defendant did not base his objection to the trial amendment on the ground of surprise, and he did not ask for a continuance at the time the motion was first made or at the time the amendment was actually filed. We think the filing of such trial amendment was largely discretionary with the trial judge. There is no showing of any abuse of such discretion, and we overrule this assignment. National Life & Accident Ins. Co. v. Hines, Tex.Civ.App., 50 S.W.2d 364; Logan et al. v. Ludwick, Tex.Civ.App., 283 S.W. 548; Rivers et al. v. Griffin et al., Tex.Civ.App., 16 S.W.2d 874.

■ The defendant further complains of the judgment of the trial court wherein the court adjudged a foreclosure of a mechanic's lien on the property herein involved in favor of the Sterling National Bank & Trust Company, in which foreclosure was included an attorney's fee of $50. The defendant asserts that the property was the homestead of the defendant at the time the mechanic's lien was given, and that no foreclosure should have been allowed as far as attorney's fee is concerned. The testimony shows that the

mechanic's lien, was placed upon the property after the marriage of the defendant. He was married at the time the lien was given, and he and his wife were using and claiming such property as their homestead at such time. The plaintiffs, in their brief, concede that the property in question was the homestead of the defendant and further concede that the defendant is correct in his contention in regard to the foreclosure including the attorney's fee. It is our opinion, and we so hold, that the property was the homestead of the defendant and his wife at the time of the execution of the mechanic's lien for the paving. We, therefore, think the court erred in granting a foreclosure on the property inclusive of the attorney's fee, but we think the Sterling National Bank & Trust Company was entitled to a foreclosure of such mechanic's lien exclusive of said attorney's fee. Summerville et al. v. King et al., Tex.Sup., 84 S.W. 643; Middleton et ux. v. Dozier Const. Co., Tex.Civ.App., 70 S.W.2d 243.

The judgment of the trial court decreeing a foreclosure against the defendant in favor of the Sterling National Bank & Trust Company of New York is hereby reformed so as to exclude the $50 attorney's fee from such foreclosure, and, as so reformed, is in all other respects affirmed.