[Civ. No. 49025. Second Dist., Div. Three. Nov. 23, 1976.]

ARNEILL RANCH, Plaintiff and Appellant, v.
FRANCIS PETIT, as Trustee, etc., et al., Defendants and Respondents.

278

## Counsel

Polston, Schwartz, Hamilton & Fenster and Michael E. Schwartz for Plaintiff and Appellant.

Barrick, Poole & Olson and John H. Poole for Defendants and Respondents.

## Opinion

**POTTER, J.**—Plaintiff, Arneill Ranch, a limited partnership, appeals from a summary judgment in favor of defendants Francis Petit, as trustee under the trust created by the terms of the last will and testament of Nancy A. Gibson, deceased, Donald A. Gibson, and Franklin Lawrence Gibson, Jr. The complaint sought damages in treble the amount of usurious interest allegedly received by defendants as lenders under a promissory note secured by deed of trust in the sum of $1,116,750. Such recovery was sought pursuant to the provisions of sections 2 (Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 40; 10 West's Ann. Civ. Code (1954 ed.) foll. § 1916 at p. 137) and 3 (Deering's Ann. Uncod. Measures, *supra,* p. 78; 10 West's Ann. Civ.

Code, *supra* (1974 Cum. Supp.), following § 1916 at p. 30) of the Usury Law as modified by California Constitution, article XX, section 22.[1]

The complaint attached a copy of the note, dated October 1, 1971, which provided for repayment of principal at the rate of $50,000 per year, or more, on April 1 of each year, commencing April 1, 1973, and continuing to April 1, 1979, at which time the remaining principal balance was due. The note provided for interest on unpaid principal "at the rate of 7½ percent per annum, or at the prime rate plus 2 percent as announced from time to time by the Bank of America National Trust and Savings Association, whichever is greater." The note further provided, however, as follows: "Should interest not be so paid, it shall thereupon bear like interest as the principal, but such unpaid interest so compounded shall not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law." The interest was made payable semiannually on April 1 and October 1.

The original complaint filed April 8, 1975, alleged that plaintiff paid to defendants on or about April 26, 1974, as "interest on the $1,066,750.00 unpaid balance of the Note for the period October 1, 1973, through March 31, 1974, the sum of $61,118.93." The first amended complaint filed December 17, 1975, added an allegation that interest in the sum of $53,388.11 was paid in October of 1973 for the period April 1, 1973, to September 30, 1973, in respect of the same principal balance. In each case, the prayer was for treble the amount of the $61,118.93 interest paid in April 1974, as a penalty. In addition, the amended complaint prayed damages in the amount of the total interest paid through the two interest payments ($114,507.04).

---

[1]Section 2 of the Usury Law provides in pertinent part: "No person, company, association or corporation shall directly or indirectly take or receive in money, goods or things in action, or in any other manner whatsoever, any greater sum or any greater value for the loan or forbearance of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year; . . . ."

Section 3 of the Usury Law provides in pertinent part: "Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery."

The 10 percent rate established by California Constitution, article XX, section 22, must, however, be read into these sections. (*Heald* v. *Friis-Hansen*, 52 Cal.2d 834, 838 [345 P.2d 457].)

Defendants moved for a summary judgment. This motion was supported by the declaration of Francis Petit. The Petit declaration showed that the interest paid on the note for the period through October 1, 1972, during which time the outstanding principal balance was $1,116,750, was $83,756.25, an amount equivalent to the 7½ percent minimum interest specified in the note. The interest paid for the six months period October 1, 1972, to April 1, 1973, was $44,172.78, on the same principal balance, for an interest rate of 7.9 percent per annum. The declaration alleged the payment of $50,000 on account of principal on April 1, 1973, reducing the principal to $1,066,750, and the payment of interest for the period April 1, 1973, to October 1, 1973, in the sum of $53,388.11. This was interest at the rate of 10.008 percent, interest at 10 percent being $53,375.

The Petit declaration also stated that defendants received interest in the sum of $61,118.93 for the period October 1, 1973, to April 1, 1974, on the principal balance of $1,066,750. This was at the rate of 11.46 percent per annum. An October 2, 1973, letter from defendants' counsel was attached to the declaration. This letter advised that 10 percent per annum was the maximum legal rate of interest and that receipt of additional interest "is subject to treble damages." The letter further advised as follows: "Because of the amount of interest payable, great care should be taken in computing the interest due for October 1. The year will run from October to October so that, in your computation, you should take the amount of interest which was paid in April, plus your computation for this October, and, if the same is less than 10% you may properly bill the borrower for the full amount. If it is in excess, then I think you should send a statement to the borrower stating that because you are limited to 10% per annum, or $110,000.00 interest, the amount in excess, which would ordinarily be due, is waived."[2]

Also attached to the declaration was a billing for interest as of October 1, 1974, showing total interest due from plaintiff to defendants at 10 percent upon the principal balance of $1,066,750 equal to $106,675, and a credit "less interest paid on or about Apr. 1, 1974—$61,118.93" for a balance of $45,556.07. On this basis the declaration concluded that "on

[2]It was probably upon this basis that defendants billed $53,388.11 interest in October 1973. If this sum were added to the $44,172.78 received April 1973, total interest for the year (October 1972 to October 1973) was $97,560.89, less than interest at 10 percent for six months upon the $1,116,750 balance up to April 1, 1973, plus interest at 10 percent per annum for six months on the $1,066,750 principal outstanding after said date, which would have totaled $109,312.50.

an annual basis at no time did the payees of the said note demand interest in excess of 10 percent per annum."

The declaration further stated that no interest was paid subsequent to April 1, 1974, that notice of default under the note was given on February 25, 1975, and "the deed of trust securing said note was foreclosed and thereby said note was extinguished."

Plaintiff filed the declaration of Charles Anselmino, one of its general partners, in opposition to the motion for summary judgment. This declaration attached a copy of a statement from defendants to plaintiff for the interest for the period October 1, 1973, to March 31, 1974, in the sum of $61,118.93. Endorsed on the statement was a notation "Paid interest 4-24-74 CK #104 = $61118.93." Also attached was a copy of the check in that sum dated 4-24-74. A handwritten memorandum furnished to plaintiff by defendant Petit set forth the method of computation of the interest. It showed the number of days at which interest was computed at rates from 12 percent down to 10¾ percent for various fractions of the six-month period.

The Anselmino declaration also enclosed the "Statement of Principal Obligation, Interest, Advances and Expenses" submitted by defendants to the trustee under the deed of trust in connection with the trustee sale conducted June 30, 1975. This document showed the balance due on the principal obligation of $1,066,750 and "interest on $1,066,750.00 from 4-1-74 to 6-30-75 at 10 per cent per annum" of $133,047.21. The principal sum plus this interest charge were added together with various sale expenses and a total initial bid of $1,205,497.21 was authorized.

The declaration further stated that at the sale held on June 30, 1975, defendant purchased the property at "the total balance indicated on said statement of $1,205,497.21."

Voluminous memoranda of law were submitted in behalf of both parties. The court ruled that "no triable issue of fact exists, and as a matter of law this court determines that the interest rate in question is not usurious." The basis of this conclusion was the court's opinion that "on its face the note is not usurious," and the proposition that "California law recognizes 'usury' as the total interest exceeding 10 percent for the full period of the loan"; though, as the court observed, "there is no question that the fluctuating interest rate did bring about a

temporary rate increase in excess of 10 percent." In accordance with this ruling, the court entered a summary judgment in favor of defendants. This appeal followed.

## Contentions

Plaintiff contends: (1) that where payment of interest in excess of the legal rate depends upon a contingency not within the control of the borrower, the receipt of such interest is usurious, and (2) that, under such circumstances, the receipt of interest for any period specified for the payment of interest at a rate in excess of the maximum lawful rate is usury, regardless of the interest received during any other period of the loan.

Defendant contends that (1) in order for any usurious interest to be paid, the total compensation received by the lender must exceed the maximum lawful rate for the full term of the loan, and (2) in view of the prime rate existing at the time of the loan, there could not have been "an intent on the part of the lender to exceed the maximum interest rate allowed."

## Discussion

The status of interest contingently payable at a rate which may be less than, or in excess of, the maximum legal rate is a matter of some uncertainty under California law. ■ We hold, however, under the circumstances of this case, that the determining factor is whether the parties are contracting in good faith and without intent to avoid the usury statute. No showing was made of the absence of a triable issue of fact in this respect. Moreover, there is an ambiguity in the note as to whether defendants were thereby entitled to receive and retain (as they did) interest in any one annual period in excess of 10 percent of the principal. Consequently, the summary judgment for defendants must be reversed.

*Where Receipt of the Maximum Lawful Rate Depends Upon a Contingency, the Interest Contingently Payable Need Not Be Limited to the Legal Rate, Provided the Parties Are Contracting in Good Faith and Without Intent to Avoid the Statute Against Usury*

The courts in California have dealt with several kinds of situations in which compensation received by a lender may exceed the maximum legal rate on the occurrence of a contingency. Some cases have dealt with the situation where a lump sum payment is required in addition to the payment of periodic interest. When this lump sum is allocated over the entire term of the loan and added to the stipulated rate of interest, it does not result in a rate in excess of the legal maximum. However, the borrower voluntarily prepays the loan together with interest at the stipulated rate to the date of prepayment. When the lump sum payment is allocated to the shortened period, it results in total compensation in excess of the lawful rate. Under these circumstances, the courts have uniformly held that the borrower cannot by his voluntary act render the payment usurious. Examples of this kind of case are *French* v. *Mortgage Guarantee Co.*, 16 Cal.2d 26, 31 [104 P.2d 655, 130 A.L.R. 67], and *Grall* v. *San Diego Bldg. & Loan Assn.*, 127 Cal.App. 250, 254 [15 P.2d 797]. The same rule has been applied in the case of the voluntary default of the borrower, resulting in the shortening of the intended term. (*Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287, 291 [9 P.2d 819].)

In two decisions of the Court of Appeal, statements have been made to the effect that where the excess interest is caused by a contingency "not under the borrower's control," the transaction is usurious.

In *Penziner* v. *West American Finance Co.*, 133 Cal.App. 578 [24 P.2d 501], a trial judgment rendered after a demurrer was sustained was reversed. The complaint alleged that plaintiff gave a note for $150,000 upon which amount he agreed to pay 7 percent interest even before it was advanced to him as progress payments for construction. Further charges added to the interest resulted that the legal rate was exceeded with respect to the amounts actually advanced. The court noted, however, that the complaint alleged "an intent to evade the law" (133 Cal.App. at p. 590). Consequently, the court's statement that interest is usurious if payable upon a contingency, "not under the borrower's control" (*id.*), cannot be construed to be applicable where no such intent is shown. Another decision of the Court of Appeal containing a similar general statement is *Calimpco, Inc.* v. *Warden*, 100 Cal.App.2d 429 [224 P.2d 421]. The facts of this case are extremely complex. One issue raised related to the sufficiency of the complaint to state a cause of action. Apparently, it was alleged that a bonus was exacted on extension (for an indeterminate period) of the time of payment of an existing obligation then due. Concerning the effect of this element of the transaction, the

court said (100 Cal.App.2d at pp. 450-451): "To constitute usury it is not necessary that there be a fixed time in the agreement. 'In testing a transaction for usury, interest must be computed on the actual sum advanced from date of advancement. . . . Where the excessive interest is caused by a contingency under the lender's control, or not under the borrower's control, the transaction is usurious.' (*Penziner* v. *West American Finance Co.,* 133 Cal.App. 578, 590 [24 P.2d 501].) The agreement, not having any specified time of payment set forth therein, must be construed as coming within section 1657 of the Civil Code and is deemed to provide for a reasonable time, and hence, what was a reasonable time was a matter to be left to the determination of the court."

The court added, however, that the provision made for repayment clearly would result in the obligation being repaid within a time resulting in a return of more than 10 percent per year. In this respect, the court said (100 Cal.App.2d at p. 451): "For the release of personal liability and an extension of the time of payment of the $63,420.91 which amount was then due, defendants were to receive 4 per cent interest per annum plus 20 lots of a fixed minimum sale price, with a power of sale in the trustees to sell all the property at any time. The agreement likewise provided minimum rental values at a sum approximating $35,000 per year more than the required payments on the deed of trust. This, on the face of it, would have paid defendants off in not to exceed three years. Taking the fixed minimum value of the lots, less the encumbrances, plus the interest provided, and dividing the total by three, would immediately show a return to defendants of more than 10 per cent interest per year."

On the other hand, several decisions of the Court of Appeal dealing with lending transactions in which the lender might receive either an amount substantially less than the maximum legal rate of interest or an amount in excess thereof have held the lawfulness of the interest to depend upon whether the transaction was entered into in good faith without intent to avoid the statute against usury or was, on the contrary, a colorable device to obtain a greater profit than lawfully permissible.

The earliest of these cases is *Jameson* v. *Warren,* 91 Cal.App. 590 [267 P. 372], in which a judgment holding a contingent arrangement unlawful was affirmed. Stock was delivered as security for a note providing for interest at the rate of 8 percent per annum. In addition, the lender was to retain the dividends from the stock. When the dividends were added to

the interest, the total compensation would exceed 10 percent per annum. The court said (91 Cal.App. at pp. 595-596): "When the payment of the full legal interest or any part thereof is subject to a contingency so that the lender's lawful profit is wholly or partially put in hazard, the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without intent to avoid the statute against usury. (39 Cyc., Usury, p. 952.)

"In the present case, however, while the evidence respecting the condition of the corporation is not before us, it sufficiently appears from the record that large dividends upon the stock pledged were anticipated, and that under the terms of the agreement the lender—who was to be repaid the principal of his loan with interest in any event—was entitled to retain from such dividends more than double the amount of the loan, if the latter should not be repaid in fifteen days. We think it is sufficiently shown by the terms of the contract that it was the intention of the parties to violate the usury law; and that the effect of their agreement, in view of what fairly appears to have been the condition of the corporation within their knowledge, was to exact for the use of the amount loaned sums in excess of a lawful rate of interest."

The same principle was restated in *Lamb* v. *Herndon,* 97 Cal.App. 193, 201 [275 P. 503], as follows: "It is also a general principle that when payment of full legal interest is subject to a contingency so that the lender's profit is wholly or partially put in hazard the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without the intent to avoid the statute against usury. (*Jameson* v. *Warren,* 91 Cal.App. 590 [267 Pac. 372].) It was known to the parties hereto at the time said transaction was entered into that the only means by which appellants could repay Herndon and Finnigan was by securing a loan on the building when remodeled. In the event that appellant failed to secure such loan then Herndon and Finnigan would have to look for payment of their outlay in financing the purchase of the property and remodeling the building to the equity owned by appellants in the property. We are of the opinion that the finding of the trial court that the bonus was not agreed to be paid for the forbearance or loan of money was supported by the evidence."

The authorities stating this rule are all collected in *Thomassen* v. *Carr,* 250 Cal.App.2d 341 [58 Cal.Rptr. 297]. In *Thomassen,* a judgment under which a lender was compensated at a rate in excess of the 10 percent per

annum was affirmed. The agreement provided that the lenders would loan $18,500 for an 18-month period, "without interest," and would subordinate to a construction loan. In lieu of interest, the lenders were to receive a sum equal to 30 percent of the borrower's net profit, if any, on the sale of the property, and in addition 30 percent of gross income from rental of the property during the period between its completion and sale. The trial court found that "the transaction was entered into in good faith without intent to evade the usury laws, and that the payment of legal interest was subject to one or more contingencies so that respondent's lawful profit was 'wholly placed in hazard.' " (250 Cal.App.2d at p. 345.) In affirming, the court said (250 Cal.App.2d at pp. 346-348):

"The return to the Carrs under the judgment for the loan of $18,500 far exceeds the 10 percent maximum interest allowable (except to specified exempt classes, which include most of the major lending institutions) by law. (Cal. Const., art. XX, § 22.) Respondents rely on a rule of law which, they say, takes the case out of the proscription against usury. This rule is stated in Restatement of Contracts, section 527, as follows: 'A promise, made as the consideration for a loan or for extending the maturity of a pecuniary debt, to give the creditor a greater profit than the highest permissible rate of interest upon the occurrence of a condition, is not usurious if the repayment promised on failure of the condition to occur is materially less than the amount of the loan or debt with the highest permissible interest, unless a transaction is given this form as a colorable device to obtain a greater profit than is permissible. In that case it is usurious.' The Restatement of Contracts gives as an illustration (p. 1026): 'A borrows from B $5000, payable in three years. It is provided in the bargain that instead of interest A shall pay B one-tenth of the profits of A's business. Although it is anticipated that this will exceed the amount of interest at the highest permissible rate, the bargain is not usurious in view of the contingency that the anticipation may not be realized.' The same rule is recognized in substantially the same form in 55 Am.Jur., § 37, p. 351; 91 C.J.S., § 31, p. 609; 6 Williston on Contracts (rev.ed. 1938), § 1692, p. 4786; and as the law in California in 1 Witkin, Summary of California Law (7th ed., 1960), § 170, p. 185.

"In *Lamb* v. *Herndon,* 97 Cal.App. 193, 201 [275 P. 503], the rule is stated thus: 'It is also a general principle that when payment of full legal interest is subject to a contingency so that the lender's profit is wholly or partially put in hazard the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good

faith and without the intent to avoid the statute against usury.' It is similarly stated in *Jameson* v. *Warren,* 91 Cal.App. 590, 595 [267 P. 372]; *Miley Petroleum Corp., Ltd.* v. *Amerada Petroleum Corp.,* 18 Cal.App.2d 183, 189 [63 P.2d 1210]; *Schiff* v. *Pruitt,* 144 Cal.App.2d 493, 499 [301 P.2d 446]; *Wooton* v. *Coerber,* 13 Cal.App.2d 142 [28 Cal.Rptr. 635].

"A distinction must be made in respect of the 'hazard' to which the interest, or its substitute, is put: In order to justify the application of the rule stated in the authorities cited above, the hazard must be something over and above the risk which exists with all loans (whether the risk be great or small), that the borrower will be unable to pay. On the face of the transaction in this case, it appears, as the trial court found, that the special hazard exists, because although by the terms of the promissory note the makers bind themselves unconditionally to repay the principal and interest at the end of 18 months, they are not obliged to pay interest for the first 18 months, but only to pay a share of the profit if there be any, and a share of rental if there be rental. The lenders' 'profit' was not only subject, as in loans generally, to the risk of inability of the debtors to pay, but to extinction by eventualities in this single transaction even though the debtors were at all times solvent.

"Appellants make several arguments against this conclusion. First, they propose that we declare that the interest contingency rule does not have standing in this state because of the constitutional provisions against usury and because the rule as stated in the California cases cited above is either dictum or is diluted by such facts as the lender's being a quasi-partner or the presence of other considerations for the excess over allowable interest than the mere lending of the money. But it is unnecessary to set down an analysis of the several cases. They state the rule to be the law, whatever the particular factual situation in each of them may be. Besides, the rule is widely accepted, as shown by the texts cited above. Nor is the rule limited to cases in which the principal is repayable only on contingency, as appellants suggest. They cite authorities which surely do hold that contingency of repayment of principal may take a loan out of the usury proscription. (91 C.J.S., § 25, p. 599; 55 Am.Jur., § 32, p. 347.) But these same authorities, as shown above, state the rule where payment of interest only is contingent.

"The interest contingency rule is subject to a principle which runs through all transactions which essentially are loans, that the courts will look to the substance rather than to the form and will condemn disguised

usury. (*Jameson* v. *Warren,* 91 Cal.App. 590, 595 [267 P. 372]; *Abbot* v. *Stevens,* 133 Cal.App.2d 242, 248 [284 P.2d 159].)

"But where a contract is not usurious as a matter of law, intent to violate the law is a necessary element and must be proved affirmatively in order that usury may be found. (*Moore* v. *Dealy,* 117 Cal.App.2d 89, 94 [254 P.2d 888]; *Sandell, Inc.* v. *Bailey,* 212 Cal.App.2d 920, 934-935 [28 Cal.Rptr. 413].) The presumption is against the existence of usury. (*Sandell, Inc.* v. *Bailey, supra,* pp. 931-932; *Coley* v. *Wolcott,* 103 Cal.App. 140, 146 [284 P. 241].)"

The court reviewed the evidence relating to the parties' intent and concluded that it supported the court's finding of lack of intent to evade the usury laws.

Section 527 of the Restatement of Contracts, held in *Thomassen* to state the law of California, is a general principle of law applicable to the contingent interest agreed to by the parties in this case. Unless the prime rate reached 8 percent, defendants would receive an amount less than the amount of the loan together with the highest permissible interest. Therefore, the fact that interest in excess of the legal rate might be payable in the event the prime rate exceeded 8 percent did not make the receipt of such interest necessarily usurious. The determination whether it was usurious depends upon the factual question whether the parties acted in good faith and without intent to avoid the usury laws, or merely gave the transaction this form as a colorable device to obtain a greater profit than was permissible under said laws.

*The Judgment for Defendants Cannot Be Sustained on the Basis That the Total Interest Paid for the Full Term of the Loan Did Not Exceed the Maximum Legal Rate*

The total interest received by defendants, including the interest charge calculated in computing defendants' bid at the trustee's sale, was less than interest at 10 percent on the principal obligation for the full period the note was outstanding. Defendants contend, and the court below held, that on this basis there was no payment of interest in excess of the legal rate because "the interest must be spread over the full period of the loan to determine the usury question." Several authorities are cited by defendants in support of this proposition. These cases do contain general statements to the effect that the maximum allowable rate of interest is 10

percent per annum for the full period of the loan. Upon analysis, however, it appears that they all involved situations in which the total compensation to the creditor included some *charges on account of the total loan period* which, when spread throughout such period, did not produce a total return in excess of the maximum rate but, by reason of the debtor's voluntary shortening of the term, did produce such excess.

Typical of these cases is *French* v. *Mortgage Guarantee Co., supra,* 16 Cal.2d 26. In that case, interest on the building loan was charged from the date of the loan upon funds not yet advanced. Had the loan remained in effect for its full term, the interest rate would have been less than the maximum lawful interest; however, the borrower repaid the entire loan within several weeks from the date of the final progress payment. Affirming the judgment for defendant, the court discussed all of the cases relied upon by defendants and said (16 Cal.2d at pp. 29-32):

"It has long been the rule in this state that in testing a contract for usury, the entire period of the loan must be taken into consideration. (*Sharp* v. *Mortgage Security Corp.,* 215 Cal. 287 [9 Pac. (2d) 819]; *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609 [254 Pac. 956, 255 Pac. 805, 53 A.L.R. 725]; *Kraemer* v. *Coward,* 2 Cal.App. (2d) 506 [38 Pac. (2d) 458]; *Penziner* v. *West American Finance Co.,* 133 Cal.App. 578 [24 Pac. (2d) 501]; *Bush* v. *Sikking,* 131 Cal.App. 703 [21 Pac. (2d) 1013]; *Finley* v. *Wyatt,* 113 Cal.App. 233 [298 Pac. 80]; *Grall* v. *San Diego Bldg. & Loan Assn.,* 127 Cal.App. 250 [15 Pac. (2d) 797]; vol. 11, Cal. Jur. Ten-Year Supp., p. 120.)

"Thus, in the case of *Bush* v. *Sikking,* 131 Cal. App. 703, where the subject is thoroughly considered, the court said:

" 'The whole question involved is whether or not the Usury Act limits the interest that may be received to [the then rate of] twelve per cent for the actual time that the money was had by the plaintiffs, or whether the defendant had the right to accept an amount in excess of twelve per cent per annum (computed upon the shortened period), in addition to the principal, by reason of the fact that the loan in question was paid before the maturity of the note. In other words, was the payment of an amount in excess of twelve per cent per annum, plus the principal, a violation of the Usury Act, when the total amount of such interest paid did not

exceed ten per cent per annum for the full period to the maturity of the note?

. . . . . . . . . . . . . . . . . .

" 'In the case of *Sharp* v. *Mortgage Security Corp.,* 215 Cal. 287, 290 [9 Pac. (2d) 819, 820], it is stated: "The first question is: What is the period to be considered when testing a transaction for the presence of usury? In *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 625 [254 Pac. 956, 255 Pac. 805, 807, 53 A. L. R. 725], this court said: 'We intended to hold that the maximum rate allowed for loans coming under the act is at the rate of twelve per cent per annum for the full period of the loan, and that within such limit the parties *may freely contract* in respect thereto, if done in writing.' While this pronouncement when made may have been open to the observation that it was *dictum,* yet we based it upon the weight of authority and what was deemed to be the only just rule, [citing *Conservative Loan Co.* v. *Whittington et al.,* 120 Okl. 137 [250 Pac. 485, 487]; *Easton* v. *Butterfield Live Stock Co.,* 48 Idaho, 153 [279 Pac. 716, 718].]" ' (Emphasis added.)

"As already indicated, in the present case the allegedly excessive interest collected was brought about by the voluntary act of plaintiffs in exercising the prepayment option. The rule is that in such circumstances the transaction is not thereby made usurious. The following authorities are to that effect: *Grall* v. *San Diego Bldg. & Loan Assn.,* 127 Cal. App. 250 [15 Pac. (2d) 797]; 66 C.J., ch. 117; *Southland Life Ins. Co.* v. *Egan,* 126 Tex. 160 [86 S. W. (2d) 722, 724]; *Deming Inv. Co.* v. *Reed et ux.,* 72 Okl. 112 [179 Pac. 35]; *Clement Mortgage Co.* v. *Johnston,* 83 Okl. 153 [201 Pac. 247]; *Eldred* v. *Hart,* 87 Ark. 534 [113 S. W. 213, 215]; *Anderson* v. *Hirsch,* (Tex. Civ. App.) 112 S. W. (2d) 535; *Barringer* v. *Jefferson Standard Life Ins. Co.,* 9 Fed. Supp. 493, 494, 495; *Cissna Loan Co.* v. *Gawley,* 87 Wash. 438 [151 Pac. 792, Ann. Cas. 1917D, 722, L. R. A. 1916B, 807]; 27 R. C. L., p. 235; see, also: note, vol. 21, Cal. Law Rev., p. 289.

"Thus in the case of *Grall* v. *San Diego Bldg. & Loan Assn.,* 127 Cal. App. 250 [15 Pac. (2d) 797], the plaintiff borrowed from the defendant $100,000, repayable in ten years by monthly instalments. The first month's interest and a bonus were deducted in advance, and the plaintiff received only $97,300. The plaintiff's note, which was secured by a deed of trust upon certain real property, called for interest at a lawful rate, and

provided that the plaintiff might repay the full amount within the year upon payment of two months' unearned interest. After making some interest payments, the plaintiff sold the property, and, with the consent of the defendant, transferred the obligation to the grantee and was released therefrom. An action was brought to recover treble the amount of the interest payments made by the plaintiff, on the ground that the transaction was in violation of the California Usury Law. It was held that the agreement was not usurious. In ruling that the full period of the loan must be considered in deciding whether excessive payments had been exacted, the court said:

" 'It is plain from an examination of the note here in question that if the $2,700 originally deducted be considered as interest and spread over the full period of the loan, and if the same was paid, the lender would not receive a profit on his investment in excess of the maximum amount permitted by the statute for the full period of the loan.

" 'It is respondents' contention, however, that the note was usurious from the beginning, and regardless of what later occurred, since it contained a provision to the effect that the appellant agreed "to accept payment in full at the end of any month before one year from date hereof by the payment by the undersigned of all sums due and two months' unearned interest as a bonus." It is argued that this provision renders the contract usurious, since the note could have been paid a month after its execution, in which event the amount of the original deductions would have exceeded the amount of interest permitted for that time. If this contention is correct, a note for $100 for one year at 5 per cent interest, the interest paid in advance, would be usurious if.it contained a clause that the debtor might pay the note at any time after one day.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 'In 27 Ruling Case Law, 235, the rule is thus stated: ". . . where the borrower has an option to pay the debt before maturity, the contract is not made usurious by reason of the fact that on exercising the option to pay before maturity the borrower is required to pay more than the legal rate of interest for the time he had the use of the money." ' "

It is apparent from the foregoing that these authorities deal only with the situation where a total compensation provided to the lender relates to

the entire term of the loan, is at a rate not in excess of the maximum rate for such entire term, and is rendered excessive only by reason of the debtor's voluntary act shortening the loan period.

■ An entirely different situation is present where the parties agree that the charge with respect to forbearance for different portions of the loan period shall be at different rates. Under such circumstances, it is apparent that the amount payable on account of one such portion has no bearing upon the amount payable with respect to another. There is no agreed total profit to a lender in respect of the entire loan period which can be said properly to be distributed throughout such period. Under such circumstances, the interest payable for each portion of the loan period is the compensation to the lender for the period of forbearance in respect of which it is payable. Consequently, the rate at which it is paid must come within the maximum legal rate. Section 2 of the Usury Law prohibits the receipt of "any greater sum or any greater value for the loan or *forbearance* of money, goods or things in action than at the rate of twelve dollars upon one hundred dollars for one year . . . ." (Italics added.) Article XX, section 22, of the California Constitution similarly prohibits receipt of "more than 10 percent per annum upon any loan or *forbearance* of any money, goods or things in action." (Italics added.) It is thus apparent that the basis upon which defendants sought to justify their receipt of the two challenged interest payments is untenable.

*Summary Judgment Was Improper Since Triable Issues of Fact Remain*

The trial court granted summary judgment upon the theory that the total interest received by defendant had not exceeded the maximum lawful rate for the entire period that the loan was outstanding. As above pointed out, (1) this was not a valid basis for the denial of relief, and (2) the lawfulness of the variable interest provisions of the note depends upon a determination whether these provisions were entered into in good faith and without intent to violate the Usury Law. The court did not determine that there was no triable issue of fact in this respect. Some of the material submitted by the parties was probative with respect to this matter but it does not appear that the parties effectively presented all matters pertinent to this issue.

To the extent that the showing in the trial court was relevant to the issue of good faith, it was consistent with the existence of good faith. The declaration in behalf of defendants as to the amount of interest paid

during the first year of the term of the note indicates that the prime rate throughout that period was 5½ percent or less. ■ Consequently, an agreement for interest at 2 percent above the prime rate did not suggest an intent to violate the usury laws. Moreover, defendants' conduct in respect of the interest due October 1974 was consistent with good faith. Pursuant to advice from defendants' counsel that the interest period was from October to October and that no interest should be charged in excess of 10 percent for any such annual period, defendants credited the $61,118.93 interest paid April 1, 1974 to the total interest for the year of $106,675 and billed plaintiff $45,556.07. This interpretation of the contract as not authorizing receipt of interest in excess of the maximum legal rate for any one-year period would be probative that it was not an attempt to evade the usury law. We are reluctant to conclude, however, that there is no genuine issue of fact with respect to good faith, inasmuch as the court did not place its decision on this basis and it does not appear that, as the issues were framed below, plaintiff has been called upon to contest defendants' good faith.[3]

■ In any event, we could not affirm the summary judgment for defendants in view of the ambiguous provisions of the note which appear to limit the interest to the "maximum rate permitted by law." If the note actually limits the total interest payable on account of any one annual period to the maximum legal rate, then it is apparent that defendants are accountable to plaintiff for overpayment of interest. Defendants' statement of October 1974 correctly computed the interest due at 10 percent, to wit, $45,556.07. The note was paid by trustee sale on June 30, 1975. Defendants were the successful bidder at a price which included an interest item of $133,047.21 for the period April 1, 1974, to June 30, 1975. The correct interest for that period, however, was $125,562.32, comprising the $45,556.07 balance through October 1, 1974, and $80,006.25 for nine months' interest at 10 percent upon the unpaid principal of $1,066,750. Consequently, by including said erroneous interest figure in their bid, defendants bid $7,484.89 more than the amount due on the note as of June 30, 1975. The making of such a bid at a nonjudicial foreclosure sale "finally fixes the value of the property therein sold" (*Cornelison* v. *Kornbluth*, 15 Cal.3d 590, 607 [125 Cal.Rptr. 557, 542 P.2d 981]) and clearly obligates the trustee who conducts the sale to account to the borrower for the excess (*Atkinson* v. *Foote*, 44 Cal.App. 149, 156 [186 P. 831]). Consequently, on principles of third party beneficiary contract

---

[3]As stated in the California authorities, the rule places the burden upon the lender to show good faith.

law, defendants' bid of an amount in excess of that due under the note was a promise for the benefit of the plaintiff to pay the difference in cash.

Consideration must, therefore, be given to the ambiguous provision of the note limiting the maximum rate of interest payable thereunder. Though this provision specifically relates to the effect of compounding interest upon unpaid interest, which it states shall not exceed "simple interest on the unpaid principal at the maximum rate permitted by law," that may have been merely the occasion deemed by the parties most likely to produce excess interest. Defendants' October 1, 1974, billing for interest is consistent with an interpretation of this note provision as limiting the interest payable in respect to any one annual period, October to October, to the maximum legal rate. There may be other extrinsic evidence bearing upon the proper interpretation of the note in this regard. Consequently, a triable issue of fact exists in this respect as well.

## Conclusion

Determination of what, if any, liability defendants have incurred to plaintiff by reason of their receipt of interest calculated at a rate in excess of the maximum legal rate of interest for the period October 1, 1973, to April 1, 1974, involves factual issues. If the promissory note contemplated a determination of the interest on an annual basis (as defendants apparently construed it), despite its provision for making such interest payable semiannually, plaintiff did not pay any interest at a rate in excess of the maximum legal rate. But the note is ambiguous in this respect and may be construed as providing for computation and payment of the interest on the basis of semiannual periods. Extrinsic evidence could justify either interpretation.

If the note is construed to provide for separate six-month interest periods, then it is apparent that plaintiff has paid and defendants have received interest for the six-month period ending April 1, 1974, at a rate in excess of the maximum lawful rate. In that event, defendants' liability for the penalties provided by section 3 of the Usury Law depends upon the factual determination as to whether the interest provisions of the note were agreed to in good faith and without intent to violate the usury laws. If it should be determined that the agreement was not in good faith and was simply a colorable device to obtain a greater profit than was permissible under the Usury Law, plaintiff should be held entitled to

recover the penalty sought. In this respect, it is immaterial that at the time such payment was made there was principal still unpaid which exceeded the amount of the interest overpayment.[4]

However, a determination in defendants' favor on the usury question would not necessarily establish their lack of liability. If the note contractually limits the maximum interest payable thereunder to the 10 percent permitted by law, defendants have been overpaid $7,484.96 as a result of the trustee's sale. The ambiguity of the note in this respect must therefore be resolved.

The judgment is reversed and remanded for further proceedings consistent with the views above expressed.

Allport, Acting P. J., and Cobey, J., concurred.

---

[4]In *Haines* v. *Commercial Mortgage Co.*, 200·Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725], our Supreme Court expressly rejected the contention that the debtor must have paid or tendered the entire principal before recovery of treble damages may be had under the Usury Law if the action is brought within one year of the payment of excess interest. The court said (200 Cal. at pp. 619-620): "We accord no merit to the contention of appellants, also of *amici curiae*, that plaintiffs must first do equity by tendering the principal and such other items, excluding interest, as may be due under the obligation, before suit may be maintained for treble the interest paid. This contention is the general rule (27 R. C. L., p. 264, sec. 67, and cases cited), but this rule has no application to the special remedy allowed the borrower under this act when the action is commenced within one year after payment. (27 R. C. L., pp. 274, 275, sec. 77; *Second National Bank* v. *Fitzpatrick*, 111 Ky. 228 [62 L. R. A. 599, 63 S. W. 459].) This construction is plain from the language of the act itself."