TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

```
        ------------------------------
                                      :
        OPINION                       :
                                      :
           of                         :     No. 87-1002
                                      :
     JOHN K. VAN DE KAMP              :     DECEMBER 1, 1988
       Attorney General              :
                                      :
       JACK R. WINKLER                :
   Assistant Attorney General        :
                                      :
    ---------------------------------------------------------------
```

THE HONORABLE ELIHU M. HARRIS, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

Does the practice by a lender making loans secured by deeds of trust on real estate of designating on its defaulted loans only those foreclosure trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA or VA secured loans only the amount the federal government will reimburse the lender for such sale and allowing the foreclosure trustee to charge the maximum fee allowed by state law on its other defaulted loans violate:

(a) the anti-rebate or anti-kickback provisions of Civil Code section 2924d(c)?

(b) the Cartwright Act prohibiting combinations in restraint of trade?

(c) the Unfair Practices Act prohibiting unfair business practices?

CONCLUSIONS

The practice by a lender making loans secured by deeds of trust on real property of designating on its defaulted loans only those foreclosure trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA and VA secured loans only the amount the federal government will reimburse the lender for such fees and allowing the foreclosure trustee to charge the maximum fee allowed by state law on its other loan foreclosures does not violate Civil Code section 2924(c) or the Cartwright Act but does violate the Unfair Business Practices Act.

ANALYSIS

This opinion involves the practices of banks and other lenders regarding services rendered by trustees of deeds of trust on real estate which secure the loans made by such lenders. A trust deed is an instrument in common use in California by which the repayment of a loan is secured by real property. It is a three party instrument by which the borrower or "trustor" conveys real property to the "trustee" in trust with the power of sale. The trustee will sell the property if the trustor defaults in the payments on the loan and pay the sale proceeds to the lender or "beneficiary" or will reconvey the property to the borrower when the loan has been repaid in full. The lender has the power to

substitute trustees under the provisions of the trust deed and under Civil Code section 2934a.

The procedures for non-judicial foreclosure of trust deeds are governed by Civil Code sections 2924 et seq. Foreclosure is commenced by recording a "notice of default." Not less than three months after the notice of default is recorded, a "notice of sale" must be given which must be at least twenty days before the "sale." The trustor may cure the default and "reinstate" the loan during the "reinstatement period" which extends from the time the notice of default is filed until five days before the sale. The default is cured by paying all delinquent and current installments due on the loan secured by the trust deed "other than the portion of principal as would not then be due had no default occurred" plus costs and fees. (§ 2924c(a)(1).)[1]

Civil Code sections 2924c(d) and 2924d(a)(b) govern the fees which a trustee may charge for services in non-judicial foreclosure of a trust deed. Three different limits are prescribed whose application depends on how far the foreclosure procedure has progressed. When the foreclosure terminates before the notice of sale is mailed the trustee's fee may "not exceed" $200 when the unpaid balance is $50,000 or less. (§ 2924c(d).) When the foreclosure terminates after notice of sale is mailed but before the sale the trustee's fee may "not exceed" $300 when the unpaid balance is $50,000 or less. (§ 2924d(a).) When the unpaid balances exceed $50,000 these limits are increased by fractional percentages of increments of the unpaid balance. When the foreclosure extends through sale the trustee's fee may "not exceed" $300 or 1 percent of the unpaid balance, whichever is larger. (§ 2924d(b).) For an unpaid balance of $100,000 the maximum trustee's fee for foreclosure would be $450 before notice of sale, $800 before sale and $1000 after the sale.

We are advised that lending institutions often name a subsidiary as the trustee in trust deeds securing their loans. We are also advised that when the borrower defaults the lender often contracts out the foreclosure procedures to a "foreclosure trustee", a business specializing in foreclosures. A number of such businesses have been established which customarily charge the maximum fees allowed by Civil Code sections 2924c and 2924d for their trustee services. Once the services are contracted for the lender substitutes the foreclosure trustee for the trustee named in the trust deed.

The lender and the foreclosure trustee are free to negotiate the amount of the trustee's fees subject to the maximums fixed by sections 2924c and 2924d. While the lender negotiates the amount of the trustee's fees on foreclosures it is not always the lender who ultimately bears their cost. If the trustor reinstates the loan after notice of default he must pay to the beneficiary, not only the amount due on the loan but also costs and the trustee's fee.[2] On the other hand when there is no reinstatement and the property is sold

---

1. All section references are to the Civil Code unless otherwise noted.

2. Civil Code section 2924c(a)(1) provides in part:

"(a)(1) Whenever all or a portion of the principal sum of any obligation secured by deed of trust . . . has, prior to the maturity date fixed in such obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, . . . the trustor . . . may pay to the beneficiary . . . the entire amount then due under the terms of such deed of trust . . . and the obligation secured thereby (including reasonable costs and expenses . . . and trustee's . . . fees, subject to subdivision (d) [which establishes maximum limits for such fees]), other than the portion of principal as would not then be due had no default occurred, and thereby cure

the trustee may deduct its fee from the proceeds of the sale.[3/]  Since the lender is often the purchaser at the sale it is often the lender who bears he cost of the trustee's fees on a foreclosure completed by sale.

On those loans which are insured by the Federal Housing Administration ("FHA" herein) or guaranteed by the Veterans Administration ("VA" herein), federal regulations limit the amount the federal government will reimburse the lender for trustee's fees on foreclosure.  (See 24 C.F.R. § 203.552 and 38 C.F.R. § 36.4313.)  The federal limits are materially lower than the maximums fixed by state law.  For example, 38 Code of Federal Regulations section 36.4313(a)(6) governing VA secured loans reads in part:  "In no event may the combined total of the amounts claimed for trustee's fees and legal services . . . exceed $350."

We understand that it is the practice of some lenders in their negotiations with foreclosure trustees on the amounts to be paid for trustee's fees to insist that the foreclosure trustee limit its fees to the amounts allowed by federal regulations on foreclosure of FHA and VA loans which culminate in a sale and allow the foreclosure trustee to charge the maximum trustee's fee allowed by state law on the other foreclosure services performed on the lender's defaulted loans.  It is this practice which prompted the request for this opinion.  We are asked whether the practice violates any of three separate statutes.  We deal with each statute in turn.

### The Rebate and Kickback Prohibitions

We noted above that section 2924d imposes limits on the fees which a trustee may charge for services in foreclosing trust deeds.  Subdivision (c) of that section prohibits any rebate or kickbacks of such fees as follows:

"(c)(1) No person shall pay or offer to pay or collect any rebate or kickback for the referral of business involving the performance of any act required by this article."

The statute does not define the terms "rebate," "kickback" or "referral" for purposes of the nonjudicial foreclosure article.  Nor have these terms been construed by the courts for purposes of that article.  The statutory proscription is against paying or collecting any rebate or kickback for the "referral" of certain business including that of a trust deed foreclosure trustee.  In the transaction in question the lender names the trustee to perform foreclosure services on its defaulted trust deeds after agreeing on some of the fees the trustee will charge for these services.  The lender appoints the trustee in the transactions in question and therefore is an integral part of those transactions.  Payments made to the trustee are for the services, not for referral of the lender to the trustee.  In the transaction in question there is no referral of any business within the meaning of the statute.  (Compare  <u>Schleimer</u> v. <u>McMillan</u>

---

the default theretofore existing . . . and the obligation and deed of trust . . . shall be reinstated . . . the same as if no such acceleration had occurred.  . . ."

3.  Civil Code section 2924d(b) provides in part:

"(b) Upon the sale of property pursuant to a power of sale, a trustee, . . . may demand and receive from a beneficiary, or his or her agent or successor in interest, or may deduct from the proceeds of the sale, those reasonable costs and expenses . . . which are actually incurred . . . and trustee's or attorney's fees which are hereby authorized to be in an amount which does not exceed three hundred dollars ($300) or one percent of the unpaid principal sum secured, whichever is greater. . . . "

87-1002

(1974) 361 N.Y.S.2d 799 in which a contract provided for payment of an attorney's fee when the amount due under the contract was "referred to an attorney" for collection. The court held that since the attorney claiming the fee was involved with the contract at the outset he was an integral part of transaction so the contract was never referred to an attorney for collection within the meaning of the contract.)

The amounts of trustee's fees mentioned in Civil Code sections 2924c and 2924d are maximums imposed by those statutes. Since they are stated as maximums the statute contemplates that the parties are free to negotiate the amounts of such fees up to and including the statutory maximum. When they agree on a trustee's fee less than the maximum there is no rebate or kickback of the difference between the agreed fee and the statutory maximum within the meaning of Civil Code section 2924c.

It has been suggested that the insistence by a lender that a foreclosure trustee accept as the trustee's fee only the amount of federal reimbursement on foreclosure sales of FHA or VA secured loans is the equivalent of an agreement to pay the maximum trustee fee allowed by state law with a rebate of the difference between the federal reimbursement and the state maximum. But this could be said of any trustee's fee negotiated by the lender which was less than the statutory maximum. If the lender and foreclosure trustee agreed on a trustee fee of 90 percent of the state maximum for all trustee services the 10 percent would not be a "rebate or kickback" under section 2924d(c)(1) quoted above. Negotiating a fee for all or a part of a foreclosure trustee's services at something less than the state maximum is not a "rebate or kickback" under that section.

We conclude that the practice of a lender making loans secured by deeds of trust of designating on its loans only those trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA or VA secured loans only the amount the federal government will reimburse the lender for such sale does not violate the rebate or kickback provisions of Civil Code section 2924d(c).

### The Cartwright Act

The Cartwright Act, Business and Professions Code ("B&P") section 16600 et seq. (the "Act") is California's anti-trust statute. It is designed to promote competition by prohibiting those agreements and actions which restrain trade. B&P section 16726 provides that "every trust is unlawful, against public policy and void " except as provided in the Act. B&P section 16720[4] defines a

---

4. B&P section 16720 provides in full as follows:

"A trust is a combination of capital, skill or acts by two or more persons for any of the following purposes:

"(a) To create or carry out restrictions in a trade or commerce.

"(b) To limit or reduce the production, or increase the price of merchandise or of any commodity.

"(c) To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.

"(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or

trust as "a combination of capital, skill or acts by two or more persons" for designated purposes including:

"(a) To create or carry out restrictions in a trade or commerce.

"(d) To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this State."

The Cartwright Act was enacted for the same basic purposes as the Sherman Act (15 U.S.C. § 1 et seq.) and decisions under the latter act are applicable to the former. Corwin v. Los Angeles Newspaper Service Bureau (1971) 4 Cal.3d 842, 852. "Although the Sherman Act and the Cartwright Act by their express terms forbid all restraints on trade, each has been interpreted to permit by implication those restraints found to be reasonable." (Id. at p. 853.) Thus to establish a violation of the Cartwright Act it must appear that the agreement or practice in question not only creates or carries out restrictions in trade but also that such restrictions are unreasonable. (Corwin, supra, at p. 853.) This is called the "rule of reason."

"However, there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. . . . Among the practices which the courts have heretofore deemed to be unlawful in and of themselves ["pro se"] are price fixing [citation]; division of markets [citation]; group boycotts [citation]; and tying arrangements. [Citation.]" ( Corwin v. Los Angeles Newspaper Service Bureau, supra, at p. 853 quoting from Northern Pac. R. Co. v. United States (1958) 356 U.S. 1, 5.)

---

commerce intended for sale, barter, use or consumption in this State.

"(e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:

"(1) Bind themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value.

"(2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

"(3) Establish or settle the price of any article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any such article or commodity.

"(4) Agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected."

The practice considered in this opinion is that of a lender making loans secured by deeds of trust on real estate of employing the services of only those who specialize in acting as trust deed trustees during foreclosures who agree to charge as a trustee fee for a foreclosure sale on its FHA or VA insured loans only the amount the federal government will reimburse the lender for such sale and allowing the trustee to charge the maximum fee allowed by state law on all other foreclosures of its defaulted loans secured by trust deeds. It is suggested that this practice constitutes price fixing or a tying arrangement which is prohibited by the Cartwright Act. We examine each suggestion in turn.

We note first that the Cartwright Act applies to sales of services, such as those of a foreclosure trustee, as well as the sale of products. (See Marin County Board of Realtors v. Palsson (1976) 16 Cal.3d 920, 925.)

Under both California and federal law, agreements fixing or tampering with prices are illegal "per se." (Oakland-Alameda County Builders' Exchange v. Lathrop Construction Co. (1971) 4 Cal.3d 354, 363.) The "per se" doctrine means that a particular practice and the setting in which it occurs is sufficient to compel the conclusion that competition is unreasonably restrained and the practice is consequently illegal. (Id. at p. 361.) But not every agreement which sets or "fixes" a price comes within the per se doctrine. Every sale involves fixing a price for the thing sold but this does not make every sale void under the Act. Traditional price fixing which constitutes a per se violation of antitrust laws is an agreement between a seller and buyer fixing the price at which the buyer will resell the product or services to others in other transactions. The California Supreme Court stated the distinction in People v. Building Maintenance Etc. Assn. (1953) 41 Cal.2d 729, 728 as follows:

"In the commonly accepted sense of the term, however, a price fixing agreement is not one whereby one party merely agrees to supply goods or services to another at a given price, but one whereby the parties seek to determine the price at which goods or services shall be offered to third parties. (Citations.)"

The practice in question involves a single transaction in which a foreclosure trustee agrees to perform all the foreclosure work on a lender's defaulted loans secured by trust deeds. With respect to fees, they agree that the trustee's fee on the foreclosures of FHA or VA secured loans which culminate in sale will be the amount of federal reimbursement for trustees fees. There is no agreement on the amount of the trustee's fees on the rest of the foreclosures. This leaves the trustee free to charge its usual fee for its trustee services on the other foreclosures subject only to the limits fixed by state law. The agreement simply fixes the amount of the fee the lender will pay the trustee for its services as trustee in foreclosing some of its defaulted loans secured by trust deeds. It does not seek to determine the price at which the trustee services will be offered to third parties. We conclude that the agreement is not a price fixing agreement prohibited by the Cartwright Act. (People v. Building Maintenance Etc. Assn., supra, 41 Cal.2d 729.)

It has been suggested that the practice described is a tying arrangement which is also illegal under the pro se doctrine. The suggestion is that by the practice in question the lender "ties" its purchases of trustee services on defaulted loans not secured by FHA or VA to its purchase of trustee services on defaulted loans secured by FHA or VA at much lower trustees fees. However, this is not one of the kinds of "tying arrangements" which the courts have held to have a pernicious effect on competition bringing it within the per se doctrine.

For purposes of the Cartwright Act:

". . . a tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer

also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed tying agreements serve hardly any purpose beyond the suppression of competition. They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power of leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons tying arrangements are illegal per se whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product [citation] and when a total amount of business, substantial enough in terms of dollar-volume so as not to be merely de minimis, is foreclosed to competitors by the tie. [Citation.]" (Corwin v. Los Angeles Newspaper Service Bureau, supra, pp. 856-857.)

Under this test it is the seller which imposes the condition or "tie" requiring the buyer to buy something he would not otherwise have purchased. In the arrangement in question it is the buyer of foreclosure trustee services who imposes the condition on the seller of those services to sell a specified portion of those services at a price which he would not have otherwise considered. We are aware of no case which has extended the per se rule against tying to conditions imposed by a buyer on an unwilling seller.

Further under the arrangement in question it is not the tie which is coerced. Foreclosure trustees would presumably be happy to provide trustee services on FHA and VA secured loans which result in sales for their usual fees. It is their agreement to provide such services at a reduced fee that is coerced by the lender. The arrangement results in a form of price discrimination, that is, the same service is provided some customers at a different price than it is provided to others. It is not the tie, the condition that the foreclosure trustee provide services on the FHA and VA secured loans, which is objectionable but that such services must be performed at a reduced price which the foreclosure trustee objects to. Does such price discrimination violate the Cartwright Act?

Nothing in the Sherman Act prohibiting combinations in restraint of trade prohibits a seller from charging different customers different prices for the same product. (Union Pacific Coal Co. v. U.S. (1909) 173 F. 737, 739.) The Robinson-Patman Antidiscrimination Act (15 U.S.C. § 13) does prohibit discrimination in price between different purchasers of commodities of like grade and quality but it does not apply to services since they are not commodities. There is no price discrimination prohibition similar to the Robinson-Patman Act in California's Cartwright Act. Thus the fact that under the arrangement in question the lender is charged much less for trustee fees for sales of FHA and VA secured loans than other customers are charged for the same services is not prohibited by the Cartwright Act.

We conclude that the practice of a lender making loans secured by deeds of trust on real estate of designating on its loans only those trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA or VA secured loans only the amount the federal government will reimburse the lender for such sale does not violate the Cartwright Act.

<u>The Unfair Practices Act</u>

The Unfair Practices Act (B&P § 17,000 et seq.) was enacted "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive,

destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented."  (B&P § 17,001.)

B&P section 17203 provides that any person performing or proposing to perform an act of unfair competition within this state may be enjoined in any court of competent jurisdiction.  B&P section 17200 provides:

"As used in this chapter, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) [concerning advertising practices] of Part 3 of Division 7 of the Business and Professions Code."

In permitting the restraining of all "unfair" business practices these statutes (formerly Civ. Code, § 3369) establish a wide standard to guide courts of equity in redressing conduct that violated the "fundamental rules of honesty and fair dealing." ( Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 112.)  In People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal.App.3d 509, 530 the court concluded that "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  This definition has been used by the Federal Trade Commission and approved by the United States Supreme Court in evaluating whether a practice is unfair under the Federal Trade Commission Act.  (See FTC v. Sperry & Hutchinson Co. (1972) 402 U.S. 233, 244.)

The request for this opinion did not mention any advertising practice.  We therefore assume that the question is directed at whether the practice described may be enjoined as unfair competition.  Thus the question is whether a lender's practice in designating on its defaulted loans only those foreclosure trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA and VA secured loans only the amount the federal government will reimburse the lender for such sale and allowing the foreclosure trustee to charge the maximum fee allowed by state law on all other defaulted loans of the lender which are secured by a trust deed constitutes an "unlawful, unfair or fraudulent business practice" within the meaning of B&P section 17200.

Under the arrangement in question, the trustee's charge to the beneficiary for conducting a foreclosure sale of property securing a VA or FHA loan is set at the amount which the VA or FHA will reimburse to the beneficiary. The amount charged to a purchaser other than the beneficiary is unaffected by the arrangement between the beneficiary and the trustee:  the trustee will charge its normal fee, usually the statutory maximum, which is considerably higher than the amount reimbursed by the VA and FHA.  The amount of trustee's fees charged to the trustor or a junior lienholder to reinstate a defaulted loan is also unaffected by the arrangement between the beneficiary and the trustee:  the trustee will charge its normal reinstatement fee, usually the statutory maximum, which will often be considerably higher than the sale amount reimbursed by the VA and FHA. Thus under the lender-beneficiary's and trustee's arrangement, the trustee could charge the trustor or junior lienholder higher fees during the reinstatement period than the trustee would charge the beneficiary after a sale even though the trustee had to perform significantly more work to complete the sale.

The fee arrangement which results in lower fees for sales to the beneficiary than reinstatements by the trustor and, hence, higher fees to the trustor for less work appears inconsistent with the statutory fee structure which is based, in part, on the amount of work performed by the trustee.  Civil Code section 2924c and 2924d establish three sets of fee limitations tied to different stages in the foreclosure process, and greater fees are permitted as a foreclosure progresses and more work is performed.  The trustee is permitted to enter fee payment arrangements based on work performed with agents and subagents

as long as the total fee charged does not exceed the statutory maximum. (§ 2924d(d).)  However, as we noted above, fee arrangements involving kickbacks and rebates for the referral of business are illegal even if the total fee charged is below the statutory maximum.  (§ 2924d(c).)  The rebate component of the fee is obviously not a charge for work performed, and the statute protects borrowers from being forced to pay consideration for the referral of business disguised in the form of a trustee's fee even though the amount of the fee might otherwise be lawful.

The fee arrangement in question contravenes public policy because the trustee's fees to all parties are not commensurate with the work the trustee performs.  If a trustee is able and willing to conduct a sale for a charge equal to the VA and FHA reimbursement rate, the trustee should demand less, not more, for performing fewer services during the reinstatement period.

The fee arrangement, which may permit the trustee to charge a higher fee at the time of reinstatement than at the time of sale, also operates unfairly against trustors and junior lienholders.  If a trustee charges a trustor or junior lienholder a higher fee than is commensurate with the level of the trustee's services to reinstate the loan, the trustee impairs the trustor's and junior lienholder's ability to reinstate because they must pay more than necessary to cure the default.  The frustration of reinstatement is antithetical to the public policy expressed in Civil Code section 2924c which encourages reinstatements to prevent foreclosure sales.

Moreover, the trustee's charge of its full fee to a third party purchaser at the sale but not to the beneficiary may have the effect of depriving the trustor or a junior lienholder of surplus sale proceeds.  The trustee has the duty to account for surplus sale proceeds (see, e.g., Arneill Ranch v. Petit (1976) 64 Cal.App.3d 277) and to pay the surplus to junior lienholders and the trustor.  (See, e.g., Pacific Loan Management Corp. v. Superior Court (1987) 196 Cal.App.3d 1485, 1491.)  If a third party had to pay higher foreclosure fees than the lender for the same trustee service, the excess amount of phantom fees is, in effect, surplus sale proceeds which rightfully belong to the trustor or junior lienholders.

Furthermore, the trustee has a duty to act fairly and reasonably in the conduct of the sale to protect the trustor's rights and to use all reasonable efforts to obtain the best possible or a reasonable price for the property. (See, e.g., Baron v. Colonial Mortgage Service Co. (1980) 111 Cal.App.3d 316, 323; Kleckner v. Bank of America (1950) 97 Cal.App.2d 30, 33.)  The trustee also may not act to reduce the pool of bidders.  (See Bank of Seoul & Trust Co. v. Marcione (1988) 198 Cal.App.3d 113,119.)  These duties are subverted by the fee arrangement in question.  Under the arrangement, the minimum opening bid, which includes the trustee's charges, would be higher for every prospective bidder than for the beneficiary.  The fee arrangement, thus, may provide the beneficiary with a competitive advantage in bidding, may discourage the participation of bidders, and may enable the beneficiary to acquire the property at a lower price than any other prospective bidder.

A court may conclude that the beneficiary and trustee violate the implied covenant of good faith and fair dealing to the trustor by entering into the fee arrangement in question.  The covenant of good faith and fair dealing is implied in every contract including a deed of trust.  (See, e.g., Schoolcraft v. Ross (1978) 81 Cal.App.3d 75; Milstein v. Security Pac. Nat. Bank (1972) 27 Cal.App.3d 482.)  That covenant prohibits any party from conduct which would impair the benefits of the agreement to another party.  We see nothing wrong with a lender's bargaining for trustee's fees below the maximum allowed by state law.  However, the particular fee agreement in question would disadvantage the trustor in the manner described above.   We think that a court would hold that with the beneficiary's power to negotiate fees and unilaterally substitute trustees (see Section 2394a) goes an implied duty to negotiate a fair fee structure

commensurate with services rendered regardless of who ultimately bears their cost. We think a court would also hold that a trustee has a duty not to enter a fee arrangement which would compromise the trustee's obligation to act fairly and reasonably to obtain the best possible price for property at a fully competitive auction. We believe that the fee arrangement in question does not fulfill these duties.

An additional unfairness of the practice in question lies in its impact on the fees foreclosure trustees charge for services on the lenders defaulted loans which are not subject to the federal reimbursement limits. These are the fees charged for trustee services in foreclosure of loans not secured by FHA or VA and those for the foreclosure of FHA or VA secured loans which do not culminate in a sale of the property. The inevitable result of charging low fees for part of the services contracted for is to charge more for the other services to maintain the same profit margin. This pressure to charge higher fees for the rest of the foreclosure trustee's services caused by the practice in question makes the practice unfair to those who must pay the higher fees. It is analogous to the loss leader pricing of merchandise prohibited by section 17044 of the Unfair Practices Act.

Accordingly, we conclude that a lender's practice of designating on its defaulted loans only those foreclosure trustees who agree to charge as a trustee fee for a foreclosure sale on its FHA or VA secured loans only the amount the federal government will reimburse the lender for such sale and allowing the foreclosure trustee to charge the maximum fee allowed by state law on its other defaulted loans is an unfair business practice under the Unfair Business Practices Act.

It has been suggested that the conclusive presumptions of Civil Code sections 2924c(d) and 2924d(a) might have some bearing upon our conclusions. As we have noted those subdivisions fix the maximum fees that a trustee may charge upon foreclosure proceedings. After prescribing the maximum fees both subdivisions add the following sentence: "Any charge for trustee's or attorney's fees authorized by this subdivision shall be conclusively presumed to be lawful and valid where such charge does not exceed the amounts authorized herein." We reject the notion that this language authorizes a trustee to charge the statutory maximum fee regardless of other laws or an agreement to perform trustee services for a lesser fee. The quoted language means that if the trustee's fee is within the limits fixed in these subdivisions of the statute and is not otherwise unlawful, the amount of the fee cannot be challenged as excessive. However, this does not mean that the trustee's fees may not be challenged on the ground that they violate some other law such as the Cartwright Act or the Unfair Business Practices Act. Thus the conclusive presumptions do not affect the conclusions we have reached in this opinion.

* * * * *