[No. H013929. Sixth Dist. May 17, 1996.]

J. ANTHONY VARR, Plaintiff and Appellant, v.
GARY L. OLIMPIA et al., Defendants and Respondents.

676

## Counsel

Reid P. Schantz for Plaintiff and Appellant.

Olimpia, Whelan & Lively, Gary L. Olimpia and James J. Der, Jr., for Defendants and Respondents.

## Opinion

**COTTLE, P. J.**—In this appeal, we are asked to determine whether Civil Code section 1917.220[1] is preempted by the Employee Retirement Income Security Act of 1974 (ERISA). (29 U.S.C. § 1001 et seq.) We hold that it is. We also hold that ERISA does not preempt California's general usury laws.

---

[1]Civil Code section 1917.220 exempts loans made by ERISA-governed pension plans from the California usury law, which restricts rates that may be charged on loans for personal, family or household purposes to 10 percent per annum.

## FACTS

In February 1988, plaintiff J. Anthony Varr retained the law firm of Olimpia, Whelan & Lively (the law firm) to represent him in a marital dissolution action. The law firm in turn retained McCahan, Helfrick, Thiercof & Butera Accountancy Corporation (the accounting firm) to provide accounting services and evaluate "the going business value of J. Anthony Varr Corporation . . . ."

The law firm has a profit sharing plan (the Plan), which is a qualified employee pension plan within the meaning of ERISA and the Internal Revenue Code. In February 1990, the Plan lent Varr $110,000 to pay for legal services rendered. In connection with the loan, Varr executed a promissory note secured by a deed of trust on real property in Scotts Valley. In October 1990, the accounting firm lent Varr $50,000 to pay for accounting services rendered. In connection with this loan, Varr executed a second promissory note, which was secured by a deed of trust on the same Scotts Valley property. The Plan later purchased Varr's note from the accounting firm. In March 1992, the Plan lent Varr another $19,531 to pay for additional legal services. Again, Varr executed a promissory note secured by the Scotts Valley property. All three notes bore interest at the rate of 11.5 percent per annum.

After Varr defaulted on the notes, the Plan initiated foreclosure proceedings. Varr filed an application in the trial court for a preliminary injunction to restrain the Plan and its agents from selling or attempting to sell the trust property, contending that the underlying obligations were usurious. The trial court denied Varr's application on the grounds "that California Civil Code § 1917.220 exempts Employee Retirement Income Security Act (ERISA) pension funds from the usury provision of California Constitution Article XV, § 1, plaintiff has an adequate remedy at law, and therefore plaintiff has not demonstrated that he has a reasonable probability of success on the merits."

Varr appeals from the denial of his application for preliminary injunction.

## DISCUSSION

A.  *The Scope of Federal Preemption Under ERISA*

■    Section 514(a) of ERISA, which preempts "any and all State laws insofar as they . . . relate to any employee benefit plan . . . ." (29 U.S.C. § 1144(a)), is "virtually unique" among preemption provisions (*Franchise*

*Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1, 24, fn. 26 [77 L.Ed.2d 420, 440, 103 S.Ct. 2841]) due to its extraordinary breadth (*FMC Corp.* v. *Holliday* (1990) 498 U.S. 52 [112 L.Ed.2d 356, 111 S.Ct. 403]).

The "breadth of § 514(a)'s pre-emptive reach is apparent from [its] language" (*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 96 [77 L.Ed.2d 490, 501, 103 S.Ct. 2890]), which was "chosen by Congress" to be " 'deliberately expansive.' " (*District of Columbia* v. *Greater Washington Board of Trade* (1992) 506 U.S. 125, 129 [121 L.Ed.2d 513, 520, 113 S.Ct. 580], quoting *Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41, 46 [95 L.Ed.2d 39, 46-47, 107 S.Ct. 1549].)[2]

"The key to § 514(a) is found in the words 'relate to.' " (*Ingersoll-Rand Co.* v. *McClendon, supra*, 498 U.S. at p. 138 [112 L.Ed.2d at p. 483].) "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." (*Shaw* v. *Delta Air Lines, Inc., supra*, 463 U.S. at pp. 96-97 [77 L.Ed.2d at p. 501].)

Obviously, ". . . state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a) [of ERISA]." (*Mackey* v. *Lanier Collections Agency* (1988) 486 U.S. 825, 829 [100 L.Ed.2d 836, 843, 108 S.Ct. 2182] (hereafter *Mackey*), citing *Pilot Life Ins Co.* v. *Dedeaux, supra*, 481 U.S. at pp. 47-48 [95 L.Ed.2d at pp. 47-48]; *Metropolitan Life Ins. Co.* v. *Massachusetts, supra*, 471 U.S. at p. 739 [85 L.Ed.2d at pp. 739-740].) Accordingly, the Supreme Court recently struck down a District of Columbia law that "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." (*District of Columbia* v. *Greater Washington Board of Trade, supra*, 506 U.S. at p. 130 [121 L.Ed.2d at p. 520].)

In addition, ". . . state laws which are 'specifically designed to affect employee benefit plans' are pre-empted under § 514(a)." (*Mackey, supra*, 486 U.S. at p. 829 [100 L.Ed.2d at p. 844]; see also *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co.* (1991) 53 Cal.3d 1041, 1047 [282 Cal.Rptr. 277, 811 P.2d 296].)

Section 514(a) of ERISA also preempts state laws that relate to covered benefit plans " 'even if the law is not specifically designed to affect such plans, or the effect is only indirect,' [citation] and *even if the law is*

___

[2]The Supreme Court has variously described section 514(a) as "broadly worded" (*Ingersoll-Rand Co.* v. *McClendon* (1990) 498 U.S. 133, 138 [112 L.Ed.2d 474, 483, 111 S.Ct. 478]), with an "expansive sweep" (*Pilot Life Ins. Co.* v. *Dedeaux, supra*, 481 U.S. at p. 47 [95 L.Ed.2d at pp. 47-48]), and a "broad scope" (*Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 739 [85 L.Ed.2d 728, 739-740, 105 S.Ct. 2380]).

*'consistent with ERISA's substantive requirements,'* [citation]." (*District of Columbia* v. *Greater Washington Board of Trade, supra,* 506 U.S. 125, 130 [121 L.Ed.2d 513, 520], italics added.)

■ However, section 514(a) of ERISA does not preempt state laws that have "only a 'tenuous, remote, or peripheral' connection with covered plans [citation] as is the case with many laws of general applicability [citations]." (*District of Columbia* v. *Greater Washington Board of Trade, supra,* 506 U.S. 125, 130, fn. 1 [121 L.Ed. 2d 513, 520]; see also *N.Y. Conference of Blue Cross* v. *Travelers Ins.* (1995) 514 U.S. ___, ___ [131 L.Ed.2d 695, 709-710, 115 S.Ct. 1671, 1680].) Moreover, in "fields of traditional state regulation," the courts "have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " (*N.Y. Conference of Blue Cross* v. *Travelers Ins., supra,* 514 U.S. at p. ___ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1676], citing among others *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 740 [85 L.Ed.2d 728, 740-741, 105 S.Ct. 2380].)

B.   *Civil Code Section 1917.220*

■ Civil Code section 1917.220[3] exempts any obligation or forbearance of an ERISA-governed pension plan or any loan made by an ERISA-governed pension plan from the California constitutional usury provisions. (See fn. 1, *ante.*) The issue presented in this case, an issue of first impression *in the California state courts,*[4] is whether this statute is itself preempted by ERISA.

We conclude based on Supreme Court precedent that section 1917.220 is indeed preempted by ERISA. First, it *specifically refers* to ERISA, and ". . .

[3]All further statutory references are to the Civil Code unless otherwise specified. Section 1917.220 provides: "[T]he restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any obligation of, loan made by, or forbearance of, any pension fund or retirement system which is subject to the Employee Retirement Income Security Act of 1974."

[4]In 1992, the Eastern District of California held in *In re Seolas* (E.D.Cal. 1992) 140 Bankr. 266 that section 1917.220 was preempted by ERISA. The bankruptcy court had granted summary judgment in favor of an ERISA-governed pension creditor, finding that the creditor was exempt from the usury laws because of section 1917.220. The debtor appealed. Relying on United States Supreme Court precedent (specifically, *Mackey, supra,* 486 U.S. 825), the district court determined that section 1917.220 was preempted because it "applies only to ERISA-governed pension plans" and "was specifically designed to affect such plans." (*In re Seolas, supra,* 140 Bankr. at p. 270.) It also held that California's general usury laws were not preempted. Decisions of lower federal courts are entitled to great weight but are not binding. (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 352 [276 Cal.Rptr. 326, 801 P.2d 1077]; *People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)

state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 843]; see also *District of Columbia* v. *Greater Washington Board of Trade, supra,* 506 U.S. 125.) Second, section 1917.220 is *specifically designed to affect employee benefit plans.* Without this provision, loans from ERISA-governed pension plans would be bound by the same general usury laws as other loans. Because this provision singles out ERISA pension plans for special treatment, it is "pre-empted under § 514(a)." (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 844]; accord, *Carpenters So. Cal. Admin. Corp.* v. *El Capitan Development Co., supra,* 53 Cal.3d at p. 1050.)

In *Mackey* the plaintiff collection agency obtained money judgments against several participants in an ERISA employee welfare benefit plan. A state court granted the plaintiff's request to garnish the employees' plan benefits. However, the Georgia Court of Appeals reversed based on a Georgia statute barring the garnishment of " '[f]unds or benefits of [an] . . . employee benefit plan or program subject to . . . [ERISA].' " (Ga. Code Ann. § 18-4-22.1, quoted in *Mackey, supra,* 486 U.S. at p. 828 [100 L.Ed.2d at p. 843].) The Georgia Supreme Court reversed the judgment of the Georgia Court of Appeals. The court held that the Georgia antigarnishment statute upon which the court of appeals relied was preempted by ERISA.

"Because of conflicting decisions among courts on the questions presented here," the United States Supreme Court granted certiorari. (*Mackey, supra,* 486 U.S. at p. 828 [100 L.Ed.2d at p. 843].) All nine members of the court agreed that Georgia's antigarnishment statute was preempted by ERISA, as the statute "related to" employee benefit plans and expressly referred to ERISA. The court split, however, as to whether Georgia's general garnishment statute was also preempted by ERISA. By a majority of five to four, the court concluded it was not.

The court noted, " 'A law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.' [Citation.] . . . [S]tate laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a). [Citations.] In fact, we have virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are pre-empted . . . . [Citations.] [¶] The possibility that § 18-4-22.1 was enacted by the Georgia Legislature to help effectuate ERISA's underlying purposes—the view of the Georgia Court of Appeals . . . —is not enough to save the state law from pre-emption. 'The pre-emption provision [of § 514(a)] . . . displace[s] all state laws that fall within its sphere, even including state laws

that are consistent with ERISA's substantive requirements.' [Citation.] . . . The state statute's express reference to ERISA plans suffices to bring it within the federal law's preemptive reach." (*Mackey, supra*, 486 U.S. at pp. 829-830 [100 L.Ed.2d at pp. 843-844].)

More recently, in *District of Columbia v. Greater Washington Board of Trade, supra*, 506 U.S. 125, the court held that ERISA preempted a District of Columbia statute, which required employers which provided health insurance to their workers to provide insurance equivalent to that received under workers' compensation law. The court noted that "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans [and] . . . [¶] Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted."[5] (506 U.S. at pp. 129-130 [121 L.Ed.2d at p. 520].)

Applying these principles to section 1917.220, it is clear that preemption applies. Section 1917.220 specifically refers to ERISA and singles out ERISA-governed pension plans for special treatment.[6] Furthermore, it is specifically designed to affect employee pension plans. Accordingly, section 1917.220 is preempted by ERISA. (*Mackey, supra*; *District of Columbia v. Greater Washington Board of Trade, supra*, 506 U.S. at pp. 129-130 [121 L.Ed.2d at p. 520].)

The Plan contends that section 1917.220 is not preempted because it is consistent with the purpose of ERISA preemption, which is " 'to ensure that

---

[5]The court explained how the District's act referred to ERISA as follows: "The health insurance coverage that § 2(c)(2) requires employers to provide for eligible employees is measured by reference to 'the existing health insurance coverage' provided by the employer and 'shall be at the same benefit level.' [Citation.] The employee's 'existing health insurance coverage,' in turn, is a welfare benefit plan under ERISA [citation], because it involves a fund or program maintained by an employer for the purpose of providing health benefits for the employee 'through the purchase of insurance or otherwise.' [Citations.] Such employer-sponsored health insurance programs are subject to ERISA regulation [citation], and any state law imposing requirements by reference to such covered programs must yield to ERISA." (*District of Columbia v. Greater Washington Board of Trade, supra*, 506 U.S. at pp. 130-131 [121 L.Ed.2d at pp. 520-522], fns. omitted.)

[6]Compare *Carpenters So. Cal. Admin. Corp. v. El Capitan Development Co., supra*, 53 Cal.3d at page 1049 ("[S]ection 3111 singles out ERISA plans for special treatment . . . . [It] does treat ERISA plans the same as other parties whose claims are based on having furnished labor or materials for a construction project. The significant difference, however, is that ERISA plans do not furnish labor or materials for construction projects. Accordingly, to treat them as persons who do furnish labor or materials is to single them out for special treatment. [Fn. omitted.] Because section 3111 singles out ERISA plans for special treatment and is, in fact, designed to affect them specifically, we conclude the statute 'relates to' ERISA plans. [Fn. omitted.]").

plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.' " (Quoting *N.Y. Conference of Blue Cross* v. *Travelers Ins.*, *supra*, 514 U.S. at p. __ [131 L.Ed.2d at p. 706, 115 S.Ct. at p. 1677].)

The Plan does not explain, however, why or how section 1917.220 is consistent with these purposes.[7] ERISA itself does not dictate the rates at which pension plan funds can be loaned out to third parties.[8] Nor does ERISA direct a plan administrator on how to invest a plan's assets. Rather, it gives the administrator broad discretion, within limits, to prudently manage the plan's funds in the interest of its participants and beneficiaries.[9] It further calls upon the administrator to diversify the plan's investments in order to minimize the risk of large losses. Thus, there is no "uniform body of benefits law" with respect to interest rates to be charged on loans to third parties.

The Plan also argues, without citation to authority, that ERISA "was not intended to pre-empt all statutes that merely reference ERISA." (Capitalization omitted.) However, the Supreme Court's statements cited above suggest just the opposite. Even the case upon which the Plan relies most heavily, *N.Y. Conference of Blue Cross* v. *Travelers Ins.*, *supra*, 514 U.S. at page __ [131 L.Ed.2d at pages 703-705, 115 S.Ct. at page 1676], reaffirmed that

---

[7]Nor is consistency with ERISA a reason to deny preemption when preemption is otherwise called for. The United States Supreme Court has repeatedly stated that section 514(a) of ERISA " 'displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.' (*Metropolitan Life Ins. Co.* v. *Massachusetts*, *supra*, [471 U.S.] at 739 [85 L.Ed.2d at pp. 739-740].) . . . Legislative 'good intentions' do not save a state law within the broad pre-emptive scope of § 514(a)." (*Mackey*, *supra*, 486 U.S. at p. 830 [100 L.Ed.2d at p. 844].)

[8]On the other hand, ERISA does specify that loans made by plans "to parties in interest who are participants or beneficiaries of the plan" are acceptable so long as they "(D) bear a reasonable rate of interest." (29 U.S.C. § 1108(b)(1).)

[9]29 United States Code section 1104 states that a plan administrator "shall discharge his [or her] duties . . . solely in the interest of the participants and beneficiaries and— [¶] (A) for the exclusive purpose of: [¶] (i) providing benefits to participants and their beneficiaries; and [¶] (ii) defraying reasonable expenses of administering the plan; [¶] (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; [¶] (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and [¶] (D) in accordance with the documents and instruments governing the plan. . . ."

where a statute does specifically make reference to an employee benefit plan, it "relates to" ERISA within the meaning of section 514(a) and is preempted. The court noted that the statute involved in that case did not refer to ERISA. The issue then became whether the statute had a "connection with" ERISA.[10] The court reiterated, " '[a] law "relates to" an employee benefit plan, in the normal sense of the phrase, if it has a connection with or *reference to* such a plan.' [Citation.] The latter alternative [i.e., a law that makes *reference to* an employee benefit plan], at least, can be ruled out. The surcharges are imposed upon patients and HMOs, regardless of whether the commercial coverage or membership . . . is . . . secured by an ERISA plan . . . with the consequence that *the surcharge statutes cannot be said to make 'reference to' ERISA plans in any manner.*" (514 U.S. at p. __ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1677], italics added.) The court compared the New York statute with the statute involved in *District of Columbia* v. *Greater Washington Board of Trade, supra,* 506 U.S. 125, which " 'specifically refer[red] to welfare benefit plans regulated by ERISA and on that basis alone [was] pre-empted.' " (*N.Y. Conference of Blue Cross* v. *Travelers Ins., supra,* 514 U.S. at p. __ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1677].) The court then went on to determine whether the New York statute was "connect[ed] with" ERISA plans within the meaning of section 514(a). (514 U.S. at p. __ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1677) It concluded that any connection was too tenuous and remote to trigger preemption.

In this case, the Plan argues that section 1917.220's connection to ERISA plans is also " 'too tenuous, remote, or peripheral . . . to warrant a finding that the law "relates to" the plan.' " (Quoting *Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. at p. 100, fn. 21 [77 L.Ed.2d at p. 503].) However, we must disagree. Section 1917.220 directly refers to ERISA and is specifically designed to affect employee benefit programs.

The Plan also argues that ERISA "does not pre-empt criminal statutes and Civil Code section 1917.220 is part of California's usury law which is criminally punishable," and "section 1917.220 is merely a valid exercise of the state's police power . . . ." (Capitalization omitted.) Both of these arguments are addressed in connection with our discussion, *post,* of whether California's general usury laws are preempted by ERISA.

## C. *California's General Usury Law*

■ California's usury law is contained in article XV, section 1 of the California Constitution, which provides, in pertinent part, that the maximum

---

[10]The *N.Y. Conference* case dealt with a New York statute that required hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan, and it also subjected certain health maintenance organizations to surcharges depending on the number of Medicaid patients the organization enrolled.

allowable rate of interest that may be charged on a loan for "personal, family, or household purposes" is 10 percent per year.[11] The three loans to Varr were made in connection with his dissolution proceeding and were thus for personal, family, or household purposes.

Unlike section 1917.220, which referred to ERISA and was specifically designed to affect ERISA plan loans, article XV of the California Constitution is a law of general applicability. The United States Supreme Court has long observed that " '[p]reemption does not occur . . . if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " (*N.Y. Conference of Blue Cross* v. *Travelers Ins.*, *supra*, 514 U.S. at p. ___ [131 L.Ed.2d at pp. 708-709, 115 S.Ct. at p. 1680], quoting *District of Columbia* v. *Greater Washington Board of Trade*, *supra*, 506 U.S. at p. 130, fn. 1 [121 L.Ed.2d at p. 520].)

Thus, the same court that held that Georgia's statute exempting ERISA funds or benefits from garnishment was preempted, because it referred to ERISA and was specifically designed to affect ERISA plans, also held that Georgia's general garnishment statute was not preempted. (*Mackey*, *supra*, 486 U.S. at p. 829 [100 L.Ed.2d at pp. 843-844].) The court noted that the general garnishment statute "does not single out or specially mention ERISA plans of any kind" (*id.* at p. 831 [100 L.Ed.2d at p. 845]) and that statutory analysis makes evident that "Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits." (*Id.* at pp. 831-832 [100 L.Ed.2d at p. 845].) The court pointed out that section 502(d) of ERISA "contemplates the enforcement of money judgments won against benefit plans" (486 U.S. at p. 832 [100 L.Ed.2d at p. 846]) but "does not provide an enforcement mechanism for collecting judgments won . . . ." (*Id.* at p. 833 [100 L.Ed.2d at p. 846].) "[T]here is no ignoring the fact," the court noted, "that, when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and not ERISA welfare

---

[11]Article XV, section 1 provides, in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest: [¶] (1) For any loan or forbearance of any money, goods, or things in action, if the money, goods, or things in action are for use primarily for personal, family, or household purposes, at a rate not exceeding 10 percent per annum; provided, however, that any loan or forbearance of any money, goods or things in action the proceeds of which are used primarily for the purchase, construction or improvement of real property shall not be deemed to be a use primarily for personal, family or household purposes . . . ."

benefit plans. . . . Congress' decision to remain silent concerning . . . garnishment of ERISA welfare benefit plan benefits [meant it] did not intend to preclude state-law attachment of ERISA welfare plan benefits." (*Id.* at pp. 837-838 [100 L.Ed.2d at pp. 848-849].)

More recently, in *N.Y. Conference of Blue Cross* v. *Travelers Ins.*, the court warned that ". . . despite the variety of . . . opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation . . . . Indeed, in cases, like this one, where federal law is said to bar state action in fields of traditional state regulation [citations], we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' [Citation.]" (514 U.S. at p. __ [131 L.Ed.2d at pp. 704-705, 115 S.Ct. at p. 1676].)

Among a state's "historic police powers" is the right to regulate usurious interest rates (cf. *Van Noy* v. *Goldberg* (1929) 98 Cal.App. 604 [277 P. 538]), an area of "traditional state regulation." (*N.Y. Conference of Blue Cross* v. *Travelers Ins.*, *supra*, 514 U.S. at p. __ [131 L.Ed.2d at p. 704, 115 S.Ct. at p. 1676].) Because it is a "law[] of general applicability" (*District of Columbia* v. *Greater Washington Board of Trade*, *supra*, 506 U.S. at p. 130, fn. 1 [121 L.Ed.2d at p. 520]) in an area traditionally left to the states, the California usury provision, like the Georgia general garnishment statute discussed in *Mackey*, should not be superseded unless " '. . . that was the clear and manifest purpose of Congress.' [Citation.]" (*N.Y. Conference of Blue Cross* v. *Travelers Ins.*, *supra*, 514 U.S. at p. __ [131 L.Ed.2d at p. 705, 115 S.Ct. at p. 1676].) However, as noted earlier, there is no indication that Congress, when it enacted ERISA, intended to displace state usury laws. ERISA does not dictate rates of interest that plans can charge on loans to third parties, and it gives plan administrators broad discretion to choose among investments for the benefit of plan participants and beneficiaries. Under these circumstances, we hold that ERISA does not preempt California's general usury laws.

Finally, to the extent that California's usury provisions carry criminal sanctions,[12] ERISA preemption could not apply in any event. Title 29 United States Code section 1144(b)(4) states that ERISA section 514(a) "shall not apply to any generally applicable criminal law of a State."

---

[12]Deering's Annotated Uncodified Initiative Measures and Statutes 1919-1, section 3, subdivision (b) (1973 ed.) p. 78 states: "Any person who willfully makes or negotiates, for himself or another, a loan of money, credit, goods, or things in action, and who directly or indirectly charges, contracts for, or receives with respect to any such loan any interest or charge of any nature, the value of which is in excess of that allowed by law, is guilty of loan-sharking, a felony, and is punishable by imprisonment in the state prison for not more than five years or in the county jail for not more than one year. This subdivision shall not apply to any person licensed to make or negotiate, for himself or another, loans of money,

For the reasons stated, we hold that ERISA does not preempt the state's general usury law.

## DISPOSITION

Because the denial of the application for a preliminary injunction was based on section 1917.220, the order denying the application is reversed. Costs are awarded to appellant.

Bamattre-Manoukian, J., and Mihara, J., concurred.

A petition for a rehearing was denied June 5, 1996, and respondents' petition for review by the Supreme Court was denied August 28, 1996. Baxter, J., did not participate therein.

---

credit, goods, or things in action, or expressly exempted from compliance by the laws of this state with respect to such licensure or interest or other charge, or to any agent or employee of such person when acting within the scope of his agency or employment."