[No. B166655. Second Dist., Div. Four. Oct. 31, 2003.]

MICHAEL JONES, Plaintiff and Appellant, v.
WELLS FARGO BANK et al., Defendants and Respondents.

1528

**COUNSEL**

Osborn & Associates and Richard G. Osborn for Plaintiff and Appellant.

Ervin, Cohen & Jessup, Randall S. Leff and Andres F. Quintana for Defendants and Respondents Wells Fargo Bank and Lauren L. Reager, M.D.

Litwak & Havkin and Stella A. Havkin for Defendant and Respondent PPM III, L.P.

Law Offices of Phillip E. Koehnke and Phillip E. Koehnke for Defendants and Respondents David Wolfe and Public Properties Management, Inc.

OPINION

**EPSTEIN, J.**—Plaintiff Michael Jones appeals from a judgment of dismissal following the sustaining of a demurrer in a suit involving a shared appreciation loan made to a partnership of which he is a limited partner. Jones alleged that the loan and a later forbearance agreement were usurious, unconscionable, and unfair, and that arranging them breached defendants' fiduciary duty to the partnership and its limited partners. The trial court sustained the defendants' demurrer to all causes of action, without leave to amend. We find no error in the trial court's ruling. We affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Jones is a limited partner of PPM III Partnership LP (PPM III), a Tennessee limited partnership. Defendants include Wells Fargo Bank, as trustee of the Lauren L. Reager, M.D. Pension Plan Trust (Reager Trust); Lauren L. Reager (Reager), an individual and beneficiary of the Reager Trust; Public Properties Management, Inc. (Public), a corporation that is the managing general partner of PPM III; and David Wolfe, an individual alleged to be a limited partner of PPM III and a corporate officer and controlling stockholder of Public (collectively, defendants).

The following summary is taken from the allegations of the second amended complaint, which we accept as true for purposes of this appeal. In February 1996, PPM III arranged to purchase improved real property in Pico Rivera, California for $1,650,000.[1] In April 1996, Wells Fargo, as trustee for the Reager Trust, loaned $1,700,000 of trust assets to PPM III to purchase the property. This loan was evidenced by a promissory note secured by a deed of trust on the property, payable by April 9, 1998. The note promised repayment of the loan principal plus 10 percent annual interest and "Excess Value Contingent Interest." The contingent interest was 50 percent of the appreciated value of the property at future sale or refinancing, up to a limit of $750,000 and excluding a reserve of up to $300,000 for renovation costs. PPM III was to manage and improve the property in expectation of dramatic property appreciation. Defendants believed the property was worth more than the purchase price and that it would appreciate further, so that the note would yield a return much higher than 10 percent.

In January 1997, after the borrowing was arranged and the property purchased, Jones became a limited partner of PPM III. Before the April 1998 due date, defendants arranged a forbearance agreement extending the note's

---

[1] The property is identified by three separate street address numbers, but the parties treat it as a single entity.

maturity date six years and raising the excess interest limit to $1,750,000. From the beginning of 1998 onward, the property's fair market value was high enough that the actual interest rate under both the original note and later forbearance agreement greatly exceeded 10 percent.

In June 2002, Jones sued defendants individually and derivatively on behalf of PPM III. He alleged that the note and forbearance agreement were usurious, unconscionable, and unfair. There were nine causes of action in his complaint: declaratory relief, usury, breach of fiduciary duty, breach of written contract, inducing breach of contract, gross negligence, restitution, cancellation of instruments, and to quiet title to the property. Defendants moved to stay, dismiss, or transfer the action, alleging that Jones's suit was part of a campaign of bad-faith litigation to delay or obstruct the sale of the property. This motion was denied without explanation.

Defendants then demurred. Jones filed a first amended complaint substantially identical to the original, but changing the date Jones became a limited partner to a date after the loan was arranged. Wells Fargo and Reager again demurred, and the other defendants later joined their demurrer. The trial court, without explanation, sustained the demurrer without leave to amend as to the causes of action for declaratory relief, usury, cancellation of instruments, and to quiet title; it granted leave to amend the other causes of action. Jones filed a second amended complaint (the charging pleading), which dropped one named defendant and four causes of action, but repeated the five remaining causes of action (breach of fiduciary duty, breach of written contract, inducement of breach of contract, gross negligence, and restitution) now renumbered almost verbatim.

Wells Fargo and Reager again demurred, and the other defendants again joined. As they had before, defendants argued that the note and forbearance agreement were not usurious or illegal because shared appreciation loans, and loans made by national banks acting in a fiduciary capacity, are exempt from the California usury law; that Jones lacked standing because he was not a limited partner of PPM III when the loan was made; that he failed to allege any fiduciary duty or duty of care owed him by defendants; and that his complaint failed to state a cause of action. Jones filed no opposition to the demurrer or joinders. The trial court sustained the demurrer without leave to amend and entered judgment against Jones. Jones filed this timely appeal as to the five causes of action in the second amended complaint.

## DISCUSSION

### I

■ Following established rules for such review, we treat the demurrer as admitting all material facts properly pleaded as amended, but not contentions, deductions, or conclusions of fact or law. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We review the complaint de novo, to determine whether, reasonably read, it states facts sufficient to constitute a cause of action. (*Ibid.*; *Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].)

The transactions in this case involve a classic shared appreciation loan arrangement, in which a lender shares in the appreciated value of property the borrower is purchasing. The gist of Jones's argument is that any shared appreciation loan designed to yield an actual interest rate higher than the rate specified in article XV of the California Constitution (10 percent) is usurious, unconscionable, and unfair per se, particularly if the value of the property at the time of the transaction makes the realization of the contingent interest a near certainty. Jones argues he has standing to sue defendants individually and derivatively regarding the note and forbearance agreement; that both the note and forbearance agreement are illegal under California's usury law; that even if they are not, they are unconscionable and unfair; that certain defendants are liable for breach of fiduciary duty, duty of due care, or contractual obligations, while the others share that liability under "vicarious liability and conspiracy theories"; and that defendants owe restitution to PPM III and its limited partners. We address each of these arguments in turn.

### II

■ To have standing to bring a derivative suit on behalf of a limited partnership, a partner-plaintiff must allege status as a partner "at the time of the transaction or any part thereof of which plaintiff complains . . . ." (Corp. Code, § 15702, subd. (a)(1).) Although Jones was not a limited partner of PPM III when the original loan was made, he alleges (and defendants do not dispute) that he was a partner when defendants arranged the forbearance agreement. That is sufficient, at least to challenge the forbearance agreement.

### III

Jones claims the note and forbearance agreement violate the California usury law. ■ The California Constitution sets a maximum annual interest rate of seven percent on loans and forbearances, but allows parties by written contract to set the interest rate at up to 10 percent, or at the level of

the Federal Reserve's discount rate plus 5 percent, on loans or forbearances involving real property. (Cal. Const., art. XV, § 1, subds. (1)–(2).) The Constitution also provides numerous exceptions to this general usury law. These include loans or forbearances made or arranged by banks or by "any other class of persons authorized by statute . . . ." (Cal. Const., art. XV, § 1, subd. (2), 3d par.; see *Carter v. Seaboard Finance Co.* (1949) 33 Cal.2d 564, 580 [203 P.2d 758].) A panoply of statutes creates further exemptions from the general usury law. (See, e.g., Fin. Code, § 1504; §§ Civ. Code, 1917.005, 1917.220.) "[T]he usury law . . . is riddled with so many exceptions that the law's application itself seems to be the exception rather than the rule." (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 807 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

Financial Code section 1504 is one of these.[2] It provides that the constitutional interest rate restrictions "shall not apply to any obligations of, loans made or arranged by, or forbearances" of any California state bank, or any national bank or foreign state-chartered bank with a main or branch office in California, if the bank is "authorized to engage in the trust business" and is "acting in its fiduciary capacity." (Fin. Code, § 1504.) The pleadings and stipulated facts establish that Wells Fargo is a national bank whose main office is in California; it is authorized to engage in the trust business; and it acted in its fiduciary capacity for the Reager Trust in arranging the note and forbearance agreement. These features place it squarely within the section 1504 exemption.[3] (Fin. Code, § 1504, subd. (b).)

Jones offers three arguments against application of Financial Code section 1504 to this case: the statute does not immunize national banks from liability for tortious breaches of duty; it is preempted by section 85 of the National Bank Act (NBA; 12 U.S.C. § 85 (section 85)); and it is preempted by the

---

[2] "Pursuant to the authority contained in Section 1 of Article XV of the California Constitution, the restrictions upon rates of interest contained in Section 1 of Article XV of the California Constitution shall not apply to any obligations of, loans made or arranged by, or forbearances of, any of the following that is authorized to engage in the trust business, when acting in its fiduciary capacity: [¶] (a) Any California state bank. [¶] (b) Any national bank that maintains its main office or a branch office in this state. [¶] (c) Any foreign (other state) state bank that maintains a branch office in this state. [¶] This section creates and authorizes an exempt class of persons pursuant to Section 1 of Article XV of the Constitution. [¶] This section does not exempt a bank authorized to transact a trust business or a subsidiary thereof from complying with all other laws and regulations governing the business in which the bank or subsidiary is engaged." (Fin. Code, § 1504.)

[3] Alternately, article XV exempts from the usury law loans or forbearances made by "any bank as defined in and operating under that certain act known as the 'Bank Act,' approved March 1, 1909, as amended[.]" The current definition of a bank as "any incorporated banking institution which shall have been incorporated to engage in commercial banking business or trust business" is derived from the Bank Act of 1909. (Fin. Code, § 102.) Wells Fargo, a California banking corporation, satisfies this definition.

federal Employment Retirement Income Security Act (ERISA; 29 U.S.C. § 1001 et seq.) We defer discussion of the first of these arguments to our review of Jones's allegations about fiduciary duty and conspiracy. We now discuss the others.

Jones argues that section 85 preempts Financial Code section 1504 because it authorizes national banks to charge interest at the greater of the rate allowed by laws of the bank's home state or a rate based on the Federal Reserve's discount rate. He cites *Smiley v. Citibank* (1995) 11 Cal.4th 138 [44 Cal.Rptr.2d 441, 900 P.2d 690], affd. (1996) 517 U.S. 735 [135 L.Ed.2d 25, 116 S.Ct. 1730] (*Smiley*), in support of this position. This is the leading decision regarding preemption under section 85. ██ The United States Supreme Court has held that section 85 allows a national bank to charge the maximum interest rate allowed in its *home* state to borrowers in any other state. (*Marquette Nat. Bank v. First of Omaha Corp.* (1978) 439 U.S. 299, 318–319 [58 L.Ed.2d 534, 99 S.Ct. 540] [noting that section 85 impairs effectiveness of states' usury laws]). *Smiley* followed *Marquette*.[4] (*Smiley*, 11 Cal.4th at p. 149.) Wells Fargo's home state is California; under *Smiley*, it may charge interest to nationwide customers at the rate authorized by California law.

However, Jones interprets "interest at the rate allowed by the laws of the State" in section 85 to refer only to the 10 percent rate for written contracts involving real estate, as specified in article XV, section 1, the state constitutional usury provision. Because section 85 does not specifically mention exemptions, he argues it preempts them. (12 U.S.C. § 85; Cal. Const., art. XV, § 1, subds. (1), (2).) There is no basis in *Smiley* nor any other authority for this selective reading of section 85. The exemptions, authorized by the constitutional provision, are laws of this state along with the general usury law, and together they constitute California's usury law for purposes of applying section 85.

Jones argues that the Financial Code section 1504 exemption is preempted by ERISA because it relates to national banks acting as trustees for ERISA pension plans. We do not agree. ██ ERISA does not preempt state laws that have only a tenuous, remote, or peripheral connection with covered plans, as do many state laws of general applicability. (*District of Columbia v. Greater Washington Board of Trade* (1992) 506 U.S. 125, 130, fn. 1 [121 L.Ed.2d 513, 113 S.Ct. 580].) Rather, ERISA preempts all state laws that "relate to

---

[4] "[T]he *Marquette* court read section 85 as a choice-of-law provision, fixing the law of the national bank's home state relative to interest rates as the rule governing all loans, even interstate loans, notwithstanding the law of any other state. Section 85 thereby entrusts the question of the lawfulness of a national bank's interest rates to its home state and to its home state alone." (*Smiley, supra,* 11 Cal.4th at p. 149.)

any employee benefit plan" covered under ERISA. (29 U.S.C. § 1144(a).) A state law relates to an ERISA plan if it has a "connection with or reference to" such a plan. (*Shaw v. Delta Air Lines, Inc.* (1983) 463 U.S. 85, 96–97 [77 L.Ed.2d 490, 103 S.Ct. 2890].) The purpose of ERISA's preemption clause—to promote national uniform administration of employee benefit plans and avert the threat of conflicting or inconsistent state or local regulations—is paramount in determining whether a state law has a connection with an ERISA plan. (*N. Y. Conference of Blue Cross v. Travelers Ins. Co.* (1995) 514 U.S. 645, 657 [131 L.Ed.2d 695, 115 S.Ct. 1671] (*Travelers*).)

Financial Code section 1504 applies to all fiduciary relationships of bank trustees and does not single out ERISA plans, directly or indirectly. Nor does it make "reference to" ERISA plans. (*Travelers, supra,* 514 U.S. at p. 656.) Neither does it pose a risk of creating conflicting state or local regulations regarding ERISA plans or interfering with nationally uniform administration. In *Travelers,* the Supreme Court reviewed a state law that had an indirect economic effect on relative costs of health insurance packages generally, including ERISA-covered benefit plans. The court held that the fact that the state law was advantageous to New York-based insurance providers did not trigger ERISA preemption. (*Travelers,* at pp. 659–662.) ■ For the same reason, section 1504, by generally exempting bank trustees from usury restrictions, does not trigger ERISA preemption. At most, the statute creates an indirect economic influence on ERISA plans by making a California trusteeship more attractive than those of states with tighter usury laws.

Jones relies on *Varr v. Olimpia* (1996) 45 Cal.App.4th 675 [53 Cal.Rptr.2d 106] for a contrary conclusion. The case does not aid him. The *Varr* court found Civil Code section 1917.220, which exempts only ERISA-covered pension plans from the usury law, is preempted under ERISA because the statute specifically refers to ERISA and ERISA plans. (*Varr,* at pp. 680–682.) Section 1917.220 is specifically designed to affect ERISA-covered employee benefit plans and refers to them; Financial Code section 1504 is not and does not.

## IV

Jones argues that because, as he alleges, defendants intended to violate the usury law, the note and forbearance are illegally usurious. ■ The four essential elements of usury include a loan or forbearance, interest exceeding the statutory maximum, absolute repayability of loan and interest, and a lender with a "willful intent to enter into a usurious transaction." (*Ghirardo v. Antonioli, supra,* 8 Cal.4th at p. 798.) In determining whether a transaction is a loan or forbearance subject to the usury law, or some other sort of

transaction that is not subject to that law, a court must look beyond the surface of the transaction to its substance. (*Id.* at pp. 801–803.)

■ Jones argues that the note and forbearance agreement are illegitimate, "sham" shared appreciation loans, due to defendants' usurious intent. But cases where intent to evade the usury law is an issue typically involve situations where the lender claims a transaction is not a loan at all. (*Ghirardo v. Antonioli, supra,* 8 Cal.4th at pp. 802–803; *Sheehy v. Franchise Tax Bd.* (2000) 84 Cal.App.4th 280, 284 [100 Cal.Rptr.2d 760]; *De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482, 509–510 [65 Cal.Rptr.2d 438]; *DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 733–740 [278 Cal.Rptr. 778].) Here, both sides agree that the transactions include a loan and a forbearance that clearly provide for possible interest above 10 percent; there is no effort to conceal these facts. Because the note and forbearance agreement fit within a legally authorized exception to the general usury law, their interest provisions do not exceed the statutory maximum. Defendants' intent is irrelevant.

Jones also argues that, due to the low purchase price of the property and its reported rapid appreciation in value, the contingent interest on the loan and forbearance agreement was not contingent, and the lender's profits were never at risk. The result, he argues, is that the shared appreciation arrangements were sham. He cites Civil Code section 1917.005 ("Lenders shall be exempt from the usury provisions of Article XV . . . with respect to shared appreciation loan transactions"), and section 1917, which defines shared appreciation loans. He recognizes that these statutes do not explicitly exempt sham transactions or transactions that are without risk or which breach fiduciary duty. But, he reasons, section 1917.005 "was obviously intended" to cover only legitimate business transactions where a lender was putting money at risk. He admits to finding no case construing section 1917.005, but cites various cases predating adoption of article XV and its exceptions in which courts considered lenders' good faith or intent to evade the usury law and whether their money was truly at risk.

Jones's argument fails on several grounds. The loan and forbearance agreement fit within a separate and independent exemption from interest rate restrictions that covers all obligations, loans, or forbearances made or arranged by bank trustees. (Fin. Code, § 1504.) Defendants need not depend on Civil Code section 1917.005 or Jones's interpretation of that statute. Although Jones argues that the property's rapid appreciation "guaranteed" that the lender would receive the full excess value cap amount, there was never any guarantee that this would occur, or that the property would not decline in value. The contingent interest was always at risk. Although Jones alleges that when the forbearance agreement was made the value of the property already

had risen to a point where contingent interest was assured, he does not allege that the lender could force an immediate sale to lock in that interest before the property value declined.

Finally, the cases Jones cites all concern transactions not subject to usury law exemptions. (See, e.g., *Ghirardo v. Antonioli, supra,* 8 Cal.4th at pp. 801–802; *Arneill Ranch v. Petit* (1976) 64 Cal.App.3d 277 [134 Cal.Rptr. 456]; *Thomassen v. Carr* (1967) 250 Cal.App.2d 341, 343–349 [58 Cal.Rptr. 297].) The question of whether loaned money or interest were at risk figured into the determination of intent to evade the usury law, and the good faith shared appreciation loan was an early common law exception to the usury law. (See *Arneill Ranch v. Petit, supra,* 64 Cal.App.3d 277, 285–287.) These cases do not apply to loans or forbearances covered by modern statutory exemptions that remove the need for evasion.

Because the note and forbearance agreement are both exempt under Financial Code section 1504, they are not illegal under California's usury law. We therefore need not and do not address other exemptions cited by respondents.

## V

Jones argues the note and forbearance agreement are unconscionable under Civil Code section 1670.5, because they guaranteed substantial contingent interest above the 10 percent rate. But, as we have seen, the contingent interest was never guaranteed. ■ More fundamentally, there is no cause of action for unconscionability under section 1670.5; that doctrine is only a defense to contract enforcement. (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 217 [27 Cal.Rptr.2d. 396].) Nevertheless, the *California Grocers* case assumed for purposes of discussion that California's unfair competition statute may create an affirmative cause of action for unconscionability. (*Id.* at p. 218; Bus. & Prof. Code, § 17200 et seq.)

■ Unconscionability is a question of law. (*Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1055 [107 Cal.Rptr.2d 645].) The doctrine includes both procedural and substantive elements. (*Id.* at p. 1052.) The procedural element requires oppression or surprise. (*Ibid.*) Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form. (*Ibid.*) The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner. (*Id.* at pp. 1052–1053.)

To be substantively unconscionable, a contractual provision must shock the conscience. (*California Grocers Assn. v. Bank of America, supra*, 22 Cal.App.4th at p. 214.)

 We need not decide whether Business and Professions Code section 17200 creates such a cause of action, because, even were we to assume that it does, Jones still fails to show unconscionability. He does not allege facts showing lack of choice, lack of negotiation, or surprise with regard to the note, the forbearance agreement, or his decision to become a limited partner of PPM III. As to substantive unconscionability, his only allegation is that a shared appreciation loan providing an effective interest rate higher than 10 percent is unconscionable per se. California law makes such arrangements legal. (Civ. Code, §§ 1917, 1917.005.) Where a lender fully funds a transaction so that the principals can enjoy major appreciation on property purchased with no down payment, and where the lender faces the risk of sudden, unexpected downturns in the property's value, it is not unreasonable or unexpected that the lender would wish to share in some of that appreciation. Under these facts, the interest provisions in the note and forbearance agreement do not shock the conscience. (*California Grocers Assn. v. Bank of America, supra*, 22 Cal.App.4th at p. 216 [noting findings of unconscionability only under more extreme facts, such as interest rate 10 times prevailing rate].)

## VI

In related arguments, Jones alleges that defendants breached a fiduciary duty to him and to PPM III, that Public breached a written contract promising PPM III the same fiduciary duty, and that all other defendants induced this breach of contract.

 Partnership is a fiduciary relationship, and partners may not take advantages for themselves at the expense of the partnership. (*BT-I v. Equitable Life Assurance Society* (1999) 75 Cal.App.4th 1406, 1410–1411 [89 Cal.Rptr.2d 811].) Jones alleges only that Public and Wolfe participated in arranging the note and forbearance agreement, and that the other defendants conspired to make this happen. He alleges no facts to show that Wolfe or Public took opportunities at the expense of PPM III or its limited partners, or failed to share any benefits proportionately among the partners. He thus fails to show any breach of fiduciary duty or of a contract promising such duty.[5]

---

[5] Wells Fargo owes Jones and PPM III no fiduciary duty directly, because there is no fiduciary relation between a debtor and a creditor. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834].)

## VII

Jones alleges that defendants are liable for gross negligence because Public and Wolfe acted in "reckless, willful and wanton disregard" of their fiduciary and other duties to PPM III and Jones. ■ A proper pleading of negligence requires allegations of the traditional elements of that tort: duty, breach of duty, causation, and damages. (*Ess v. Eskaton Properties, Inc.* (2002) 97 Cal.App.4th 120, 126 [118 Cal.Rptr.2d 240].) The only breach alleged here is arranging the note and forbearance agreement; the only injury, an obligation to share some of the major appreciation on a property purchased with no money down. This is far short of an adequate pleading for negligence, let alone gross negligence.

## VIII

Jones alleges that defendants conspired to commit the various wrongful acts described in the complaint. ■ No cause of action for conspiracy exists unless the pleaded facts show some wrongful act that would support a cause of action without the conspiracy. (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1019 [48 Cal.Rptr.2d 174].) The assertion that defendants "conspired" to arrange a shared appreciation loan with an actual interest rate potentially higher than 10 percent, to allow PPM III the possibility of major asset appreciation with no down payment, alleges neither a wrongful nor an unlawful act. It affords no basis for holding defendants liable.

## IX

Jones argues that defendants owe restitution to PPM III and its limited partners. ■ Restitution requires unjust enrichment of a defendant. (*Marina Tenants Assn. v. Deauville Marina Development* Co. (1986) 181 Cal.App.3d 122, 134 [226 Cal.Rptr. 321].) Jones alleges no facts to show unjust enrichment save the note and forbearance agreement. Defendants will not be unjustly enriched by receiving contingent interest to which they are legally entitled.

## X

Jones argues on appeal that Public and Wolfe's joinder in Wells Fargo and Reager's demurrer to his second amended complaint was untimely under Code of Civil Procedure section 1005, subdivision (b). ■ That statute requires that notice of a motion be given 21 days before a hearing, with five additional days if notice is served by mail. (Code Civ. Proc., § 1005, subd. (b).) Public and Wolfe filed their notice of joinder by

mail on January 8, 21 days before the January 29 hearing. They joined a general demurrer and raised no new arguments. Jones had notice from December 30, 2002, the date Wells Fargo and Reager filed their general demurrer to the second amended complaint. Thus Jones had sufficient notice under Code of Civil Procedure section 1005, subdivision (b).

## DISPOSITION

The judgment is affirmed. Respondents are to have their costs on appeal.

Vogel (C. S.), P. J., and Hastings, J., concurred.